**NATIONAL TREASURY EMPLOYEES UNION, et al.**

v.

**Donald J. DEVINE, Director, Office of Personnel Management.**

No. 84–5009.

United States Court of Appeals, District of Columbia Circuit.

Argued March 19, 1984.

Decided April 27, 1984.

Richard A. Olderman, Attorney, Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. DiGenova, U.S. Atty., and Anthony J. Steinmeyer, Attorney, Dept. of Justice, Washington, D.C., were on the brief, for appellant.

Lois G. Williams, Washington, D.C., with whom Kerry L. Adams and Gregory O'Du-

den, Asst. Counsel, Washington, D.C., were on the brief for appellee, Nat. Treasury Employees Union.

William J. Stone and Mark D. Roth, Washington, D.C., were on the brief for appellee, American Federation of Government Employees, AFL–CIO.

Catherine Waelder and Patrick J. Riley, Washington, D.C., were on the brief for appellee, Nat. Federation of Federal Employees.

Before EDWARDS, BORK and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Donald Devine, Director of the Office of Personnel Management ("OPM"), appeals from a decision of the District Court enjoining the implementation, administration and enforcement of new OPM regulations governing certain personnel policies for federal employees. *National Treasury Employees Union v. Devine*, 577 F.Supp. 738 (D.D.C.1983), *reprinted in* Joint Appendix ("J.A.") 178. The District Court reasoned that OPM's attempted implementation of the regulations had been blocked by a congressional appropriations measure,[1] and that the regulations therefore were "without any effect whatsoever, *as long as OPM's funding derives from H.J.Res. 413.*" *National Treasury Employees Union*, 577 F.Supp. at 750 (emphasis added), *reprinted in* J.A. 205. We conclude that the holding of the District Court is clearly justified and, accordingly, we affirm.

## I. BACKGROUND

On March 30, 1983, the OPM proposed dramatic changes in federal personnel practices relating to reduction in force procedures, performance management systems, and pay administration under the Fair Labor Standards Act of 1938.[2] These changes were designed to place greater emphasis on individual job performance, while reducing the importance of length of service, in personnel decisions. Widespread congressional opposition led OPM to propose a modified version of the proposed regulations on July 14, 1983.[3] However, on August 15, 1983, by virtue of continued dissatisfaction with OPM's proposed changes, Congress adopted the Department of Transportation and Related Agencies Appropriations Act ("Transportation Appropriations Act") in which it was specified that no funds could be obligated or expended before October 15, 1983 to effectuate the March 30 or July 14 OPM proposals or revisions of the proposals.[4]

While the restrictions of the Transportation Appropriations Act were still in effect, Congress was focusing on the pressing need to fund the federal government for fiscal year 1984. Because of a number of unresolved issues, Congress decided to shun the regular appropriations process and, on October 1, 1983, passed a continuing funding resolution.[5] Among other things, this resolution authorized funds for OPM at the fiscal year 1983 levels for the period October 1 through November 10, 1983, with no restrictions on OPM's authority to issue personnel regulations. Consequently, during the brief period between October 15 (when the restrictions in the Transportation Appropriations Act terminated) and November 10, 1983, no restrictions would be in effect.

**1.** Further Continuing Appropriations for Fiscal Year 1984 ("H.R.J.Res. 413"), Pub.L. No. 98–151, 97 Stat. 964 (1983), *reprinted in* J.A. 74.

**2.** 29 U.S.C. §§ 201–219 (1976 & Supp. V 1981). *See* 48 Fed.Reg. 13,342 (1983) (to be codified at 5 C.F.R. pts. 300, 335, 430, 431, 451, 531, 532 & 540); 48 Fed.Reg. 13,368 (1983) (to be codified at 5 C.F.R. pt. 351); 48 Fed.Reg. 13,374 (1983) (to be codified at 5 C.F.R. pt. 551).

**3.** *See* 48 Fed.Reg. 32,280 (1983); 48 Fed.Reg. 32,288 (1983); 48 Fed.Reg. 32,304 (1983).

**4.** Department of Transportation and Related Agencies Appropriations Act, 1984, Pub.L. No. 98–78, § 323, 97 Stat. 453, 474–75 (1983).

**5.** Continuing Appropriations for Fiscal Year 1984, Pub.L. No. 98–107, 97 Stat. 733 (1983).

Congress acted promptly, however, to fill the void and to reinstate the restrictions on OPM authority to implement new personnel regulations. On October 18, 1983, the House Appropriations Committee reported H.R. 4139, H.R.Rep. No. 417, 98th Cong., 1st Sess. (1983), which proposed fiscal year 1984 appropriations for OPM and several other agencies. Section 508, "the Hoyer Amendment," provided that:

> None of the funds appropriated under this Act shall be obligated or expended to implement, promulgate, administer, or enforce the proposed Office of Personnel Management regulations and the proposed Federal Personnel Manual issuances published in the Federal Register on March 30, 1983, on pages 13341 through 13381, as superseded by proposed regulations and Federal Personnel Manual issuances published in the Federal Register on July 14, 1983 on pages 32275 through 32312.

H.R. 4139, 98th Cong., 1st Sess. § 508 (1983).

While this restriction was pending before Congress, the OPM issued final regulations on October 25, adopting the proposed changes in personnel practices in somewhat modified form.[6] Two days later the House passed H.R. 4139, without changing the language of the Hoyer Amendment to refer more precisely to the October 25 regulations. H.R. 4139 was enacted into law on November 12, 1983, when Congress passed House Joint Resolution 413, a second continuing funding resolution. H.R.J.Res. 413, Pub.L. No. 98–151, 97 Stat. 964 (1983), reprinted in J.A. 74. This resolution, passed two days after funding for the federal government had expired, included a provision appropriating such amounts "as may be necessary for continuing the activities ... which were provided for in H.R. 4139, the Treasury, Postal Service and General Government Appropriation Act, 1984,

as passed the House of Representatives on October 27, 1983, ... to the extent and in the manner provided for in such Act." Id. at 982, J.A. 92.

Despite this legislation, the appellant announced on November 21, 1983, that the new OPM regulations would become effective on November 25, 1983. OPM News Release (Nov. 21, 1983), reprinted in J.A. 47. Devine indicated that, while H.R.J.Res. 413 "barred the spending of funds to implement the regulations," no expenditure of funds was required for the regulations to go into effect. Id. Further, although he recognized that "the intent of the bar may be to prohibit OPM's administration or enforcement of the regulations," he concluded that each federal agency would simply have to administer and enforce the regulations without OPM's assistance (presumably to avoid the effect of the congressional restrictions). Id. He acknowledged that this would result in "the paradox of rules becoming effective without the oversight to assure that they are implemented fairly.... The fact that we have rules that will not be overseen by the oversight agency, while not unique, is certainly unusual." Id.

On November 23, the District Court granted a request of appellee, National Treasury Employees Union, for a temporary restraining order staying implementation of the regulations. See National Treasury Employees Union v. Devine, No. 83–3322 (D.D.C. Nov. 24, 1983) (order granting temporary restraining order), reprinted in J.A. 173. After full briefing, the trial court granted summary judgment for the appellees,[7] holding that the regulations published on October 25, 1983 were null and void. National Treasury Employees Union v. Devine, 577 F.Supp. 738 (D.D.C.1983), reprinted in J.A. 178. This determination is now challenged on appeal.

**6.** 48 Fed.Reg. 49,462 (1983); 48 Fed.Reg. 49,472 (1983); 48 Fed.Reg. 49,494 (1983).

**7.** On December 6, 1983, the National Federation of Federal Employees and the American Federation of Government Employees were permitted

to intervene in this action to challenge OPM's regulations. National Treasury Employees Union v. Devine, No. 83–3322 (D.D.C. Dec. 6, 1983) (order granting intervention), reprinted in J.A. 176.

## DISCUSSION

The crux of the appellant's position is that the District Court erroneously construed the scope and effect of H.R.J. Res. 413.[8] As noted above, OPM officials initially recognized and acknowledged the restrictions imposed by Congress on the authority of the agency to effectuate new personnel regulations. *See* OPM News Release (Nov. 21, 1983), *reprinted in* J.A. 47. In a noticeable departure from its original view, OPM now asserts that the congressional resolution only applies to the agency's proposed regulations, and has no effect on the final regulations that were issued after notice and comment on the proposed regulations. Alternatively, the appellant again argues that the resolution does not prevent any agency other than OPM from implementing, administering and enforcing the regulations within that agency. We hold that both arguments were properly rejected by the District Court.

## I.

The appellant's suggestion that the congressional resolution is not applicable to the regulations as finally issued on October 25 is singularly unpersuasive. This position is belied by the plain terms of the resolution. The resolution bars the expenditure of funds to "implement, promulgate, *administer* or *enforce*" the proposed regulations. As proposed regulations are only administered and enforced *after* they are issued as final regulations, when Congress bars the administration and enforcement of proposed regulations, it is speaking of those regulations as finally issued.

Indeed, it is almost inconceivable that the House Appropriations Committee could have intended any other meaning in reporting H.R. 4139. Proposed regulations will frequently be modified when promulgated as final regulations—such evolution is, after all, one of the very purposes of notice and comment rulemaking. The Committee was obviously aware of this fact, and it is extraordinarily unlikely that it intended to allow such modifications to serve as a loophole by which OPM could disregard Congress' express opposition to the changes in personnel regulations.

Even were we willing to assume that the House Committee acted so myopically in approving the language in H.R. 4139, it is abundantly clear that Congress intended the language to cover the final regulations when it passed H.R.J.Res. 413. There is no

---

**8.** The appellant has also argued that this case cannot be brought under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706 (1982), because provisions in the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7105, 7123, 7703 (1982), established the exclusive means to review the decisions at issue here. Appellant's brief, pp. 12–13. This claim is meritless. It is one thing to say that when a statute provides a detailed scheme of administrative protection for defined employment rights, less significant employment rights of the same sort are implicitly excluded and cannot form the basis for relief directly through the courts. *Cf. Carducci v. Regan*, 714 F.2d 171 (D.C.Cir.1983). It is quite different to suggest, as appellant does, that a detailed scheme of administrative adjudication impliedly precludes preenforcement judicial review of rules. *Cf. International Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C.Cir.1983) (rejecting similar implication based on enforcement scheme in Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1976 & Supp. V 1981)).

We also reject the appellant's somewhat ill-defined suggestion that the Constitution somehow forbids Congress from passing legislation without exercising greater care than it did in passing H.R.J.Res. 413. The appellant asserts that legislation directing conduct by the Executive Branch—in this case voiding regulations—"must be unambiguous," appellant's brief, p. 32, and must be accompanied by evidence in the record demonstrating that both houses of Congress acted in a "step-by-step deliberate and deliberative manner." *Id.* at 33. It is true that courts must act cautiously in interpreting appropriations measures, to avoid inferring substantive effects that were never intended. *See TVA v. Hill*, 437 U.S. 153, 190, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). However, the Supreme Court has never suggested that this principle of statutory construction should be transformed into a rigid constitutional mandate, requiring courts to make a qualitative determination whether each house has given a measure *sufficient consideration* before voting in favor of it. Such an intrusion into Congress' legislative deliberations would pose serious separation-of-powers problems, and neither the language nor logic of the Constitution compels such an inquiry.

dispute that in so acting, Congress was fully aware that the proposed regulations had been superseded by the final regulations. *See, e.g.*, 129 CONG.REC. H8731 (daily ed. Oct. 27, 1983) (statement of Representative Hoyer), *reprinted in* J.A. 171. As the language of the resolution easily supports the conclusion that it encompassed the final regulations, there is no reason to ascribe to Congress the meaningless act of passing legislation aimed only at superseded regulations. *See, e.g., FTC v. Manager, Retail Credit Co., Miami Branch Office*, 515 F.2d 988, 994–95 (D.C.Cir.1975) ("The presumption against interpreting a statute in a way which renders it ineffective is hornbook law.... In the face of a perfectly plausible and consistent alternative construction of the statute, [such an interpretation] is untenable.").

The appellant's implication that Congress ignored the final regulations, while barring the superseded regulations, is also hopelessly at odds with the concerns expressed by Congress in the legislative history. In explaining the rationale for Congress' efforts to block the new personnel regulations, the House Report states:

> The authorizing committees with jurisdiction over the personnel issues raised in the proposed regulations have indicated a desire to prevent implementation of the regulations until such time as they have reported legislation of the regulations covering the personnel issues raised in the proposed regulations. Since the Committee believes that the ... proposed regulations constitute major changes in the civil service system and since the relevant authorizing committees are considering legislation that may supercede these proposed regulations, the Committee has recommended that no funds contained in this Act be made available for the implementation, administration, or enforcement of the [proposed regulations].

H.R.REP. No. 417, 98th Cong., 1st Sess. 76 (1983), *reprinted in* J.A. 165. This concern is, of course, just as applicable to the regulations as finally issued as it was to the proposed regulations. The final regulations "constitute major changes" in personnel management policy of the same sort found in the proposed regulations; any dissimilarities between the final regulations and the proposed regulations are overwhelmingly differences in degree rather than in kind. Indeed, in the House debate preceding the passage of H.R. 4139, the Chairman of the House Appropriations Committee expressly acknowledged that the Committee would have included the final regulations in the language of H.R. 4139 if the regulations had been promulgated prior to issuance of the House Report. 129 CONG.REC. H8731 (daily ed. Oct. 27, 1983) (statement of Representative Royball), *reprinted in* J.A. 171.

Unable to point to anything in the legislative history suggesting that Congress might have been less antagonistic to the final regulations, the appellant asserts that Congress simply did not take the time to amend H.R. 4139 or H.R.J.Res. 413 to cover these regulations specifically. While such an amendment might have been prudent, *see* 129 CONG.REC. H8731 (daily ed. Oct. 27, 1983) (statement of Representative Hoyer), *reprinted in* J.A. 171, it certainly was not essential in view of the fact that the language of, and expressed rationale for, the legislation indicated its applicability to the final regulations. Congress' decision not to amend the legislation therefore most likely reflects its view that effectuation of the final regulations was precluded by the language already employed in H.R. 4139 and H.R.J.Res. 413. *See* 129 CONG. REC. S16042 (daily ed. Nov. 12, 1983) (statement of Senator Warner) ("this resolution requires a delay in the implementation of OMB management regulations"), *reprinted in* J.A. 166; 129 CONG.REC. H9632 (daily ed. Nov. 10, 1983) (statement of Representative Dannemeyer) ("The Hoyer amendment precludes these needed changes from being implemented."), *reprinted in* J.A. 167; 129 CONG.REC. H8731, H8732 (Oct. 27, 1983) (statement of Representative Paris) ("I rise in support of the effort *to prevent implementation of the OPM ... regulations* .... The Congress has a responsibility to

preserve the integrity of the civil service by preventing OPM from making such major changes in the civil service by regulatory fiat.") (emphasis added), *reprinted in* J.A. 171, 172.

When the preceding analysis is considered in its entirety, and in the context of continuing congressional efforts to block the new regulations, we have no trouble resolving the first issue before us. In the words of the District Court, "[t]he inescapable conclusion is that in the Hoyer amendment, Congress must have been concerned with the set of final regulations." *National Treasury Employees Union v. Devine,* No. 83–3322, mem. op. at 17 (D.D.C. Dec. 5, 1983), *reprinted in* J.A. 196.

## II.

■ Having concluded that H.R.J.Res. 413 applies to the final regulations, we turn now to the effect of this application. As we have explained, the final regulations were promulgated prior to passage of H.R. J.Res. 413. Nevertheless, the regulations require OPM to take many additional steps to fully implement, administer and enforce the regulations.[9] In the District Court's view, by prohibiting OPM from taking these steps—as mandated in the regulations—Congress rendered the regulations null and void. The appellant contests this view, arguing that because OPM promulgated the final regulations before Congress passed H.R.J.Res. 413, the regulations are valid and federal agencies other than OPM should comply with the regulations, as well as self-administer and -enforce them.

In considering these competing views, we emphasize at the outset that the express terms of the regulations require OPM to play a critical and continuing role in their implementation, administration, and enforcement. For example, section 430.207 stipulates that "[a]gencies *must* submit proposed Performance Management Plans to the Office of Personnel Management for *review and approval.*" 48 Fed.Reg. 49,-

481 (1983) (to be codified at 5 C.F.R. § 430.207(a)) (emphasis added). "Each agency *shall* maintain records and submit reports *required by OPM* regarding the operation of an agency Performance Management Plan...." *Id.* (to be codified at 5 C.F.R. § 430.207(c)) (emphasis added). "Proposed changes to approved Performance Management Plans which would have an impact on how an agency meets legal or regulatory requirements *must* be submitted to the Office of Personnel Management for review and approval." *Id.* (to be codified at 5 C.F.R. § 430.207(b)) (emphasis added). The role played by OPM under these provisions in section 430.207 is similar to that mandated elsewhere in the regulations. Important decisions regarding the implementation of the regulations must be approved by the OPM, and OPM is required to play a continuing role in their administration and enforcement.

In arguing that agencies other than OPM can now assume OPM's role in effectuating the regulations, OPM is abdicating its "central responsibility for executing, administering, and enforcing civil service rules and regulations...." S.REP. NO. 969, 95th Cong., 2d Sess. 5 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2727 (referring to rules and regulations "other than those under the jurisdiction of the Merit Systems Protection Board"). OPM has not even suggested that Congress intended such a fundamental departure from the personnel management scheme created by Congress when it passed the Civil Service Reform Act. *See, e.g.,* 5 U.S.C. § 1103(a)(5) (1982) (vesting in OPM the functions of "executing, administering, and enforcing ... the civil service rules and regulations of the President and the [OPM] and the laws governing the civil service"). To the contrary, OPM has candidly acknowledged that its interpretation of Congress' action would result "in the paradox that these rules will apply to the whole government, excepting OPM itself. This

---

**9.** *See, e.g.,* 48 Fed.Reg. 49,465 (1983) (to be codified at 5 C.F.R. § 351.402(c)); *id.* at 49,480 (to be codified at 5 C.F.R. § 430.206(a)); *id.* at 49,483 (to be codified at 5 C.F.R. § 431.207(a)); *id.* at 49,496 (to be codified at 5 C.F.R. § 551.-201).

situation is not ideal, but half a loaf is better than none." OPM News Release (Nov. 21, 1983), *reprinted in* J.A. 47.

All things considered, we find OPM's position untenable. Initially, it is important to note that appellant never has explained how the regulations sensibly can be effectuated without OPM's continued participation. The regulations mandate a continuing exchange between each agency and the OPM—it is through this exchange that the regulations' provisions are effectuated. The appellant does not suggest that the agencies have any authority to disregard the requirements in the regulations. *See, e.g.,* 29 U.S.C. § 204(f) (1976 & Supp. V 1981) (OPM shall administer provisions of Fair Labor Standards Act with respect to individuals employed by the United States); 5 U.S.C. § 3502(a) (1982) (OPM shall prescribe regulations for the release of competing employees in a reduction in force); *id.* § 4305 (OPM authorized to prescribe regulations applicable to agency performance appraisal systems). Hence, if Congress' action is construed as prohibiting only OPM's participation in this exchange, the absurd result is that each agency must continually file plans and recommendations with OPM, and then await the approval that OPM is forbidden to provide. The most notable effect of such a one-sided exchange would be the steady accumulation of unreviewed proposals in the storage rooms at OPM. Obviously Congress did not intend a personnel management "system" of this sort, and its action should not be so construed. *See Alabama Power Co. v. Costle,* 636 F.2d 323, 360 n. 89 (D.C.Cir. 1979) (as amended 1980) (court must look beyond words to purpose of statute where its literal terms lead to absurd results).

Indeed, even assuming *arguendo* that the regulations could be implemented workably without further participation by the OPM, it is evident that Congress intended to prevent this. On this point, Congress expressly stated that it wished to prevent the effectuation of major changes in personnel management policies before it had an adequate opportunity to consider possible legislative solutions. H.R.REP. No. 417,

98th Cong., 1st Sess. 76 (1983), *reprinted in* J.A. 165. We cannot ignore such clear indications of Congress' intent. *See United States v. American Trucking Associations,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (When the plain meaning of legislation "has led to absurd or futile results ... this Court has looked beyond the words to the purpose of the act. Frequently ... even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words.") (footnotes omitted). Consequently, we agree with the District Court that H.R.J.Res. 413 must be construed to block *any* further implementation, administration or enforcement of the regulations, and "they are therefore without any effect whatsoever, as long as OPM's funding derives from [H.R.J.] Res. 413." *National Treasury Employees Union v. Devine,* 577 F.Supp. at 750 (D.D.C.1983), *reprinted in* J.A. 205.

In so holding, we emphasize the finite nature of the congressional prohibition. There is no suggestion in the language of the Hoyer Amendment, or H.R.J.Res. 413, that Congress intended to bar implementation of the regulations beyond the period during which OPM receives its funds through H.R.J.Res. 413. Moreover, as we have said, the legislative history indicates that Congress sought additional time to evaluate legislative solutions—it does not suggest that Congress permanently repealed OPM's authority to implement the disputed regulations. Therefore, we hold that when OPM's funding no longer derives from H.R.J.Res. 413, OPM will be free to take any steps deemed necessary to implement, administer and enforce the regulations, unless Congress acts to impose new restrictions.

### III.

For the foregoing reasons, the judgment of the District Court is affirmed. The personnel regulations affecting the Federal

Civil Service, published by OPM on October 25, 1983, at 48 Fed.Reg. 49,462–70, 49,472–92, 49,494–98 (1983), are null and void, and the appellant and his agents and employees are enjoined from directly or indirectly taking any actions with respect to said regulations, as long as OPM's funding derives from H.R.J.Res. 413.

*So ordered.*