**Milo BURROUGHS, Plaintiff-Appellant,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, et al., Defendants-Appellees.**

**No. 84–4064.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1985.

Decided July 2, 1985.

Joseph F. Quinn, McCormick, Hoffman, Rees & Faubion, Tacoma, Wash., for plaintiff-appellant.

Marie G. Creson, Asst. U.S. Atty., Tacoma, Wash., for defendants-appellees.

Before GOODWIN, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge.

The plaintiff is employed as a civilian Supervisory Flight Test Pilot by the Department of the Army. He seeks to have his position reclassified from a GS–12 level to a GS–13. He was successful in his first administrative review by the Northwest Regional Office of Personnel Management, but the Office of Personnel Management's ("OPM's") Classification Appeals Office in Washington overturned the regional decision. The district court granted summary judgment in favor of OPM and Burroughs here contends that the district court erred when it concluded that OPM's final classification decision was reasonable and based on substantial evidence. In this appeal, we first address the government's challenge to the district court's jurisdiction over the case and then address the merits of the district court's decision.

This action was filed pursuant to the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. The district court assumed jurisdiction under the Mandamus Act, following authority holding that employees under the Act may obtain limited review of classification decisions for purposes of prospective relief. *United States v. Testan,* 424 U.S. 392, 403, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976); *Haneke v. Secretary of Health, Education & Welfare,* 535 F.2d 1291, 1295–96 (D.C. Cir.1976). *See generally* 14 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3655 (1985). This court has considered job classification challenges without jurisdictional question. *White v. United States Civil Service Commission,* 468 F.2d 1357, 1358–59 (9th Cir.1972) (per curiam).

Those cases, however, were all decided before the enactment of the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. 95–454, 92 Stat. 1111, and at a time when the Civil Service Commission ("CSC") was charged with enforcement of the Classification Act. The CSRA abolished the CSC and created the OPM to monitor the classification system, which the CSRA left largely unchanged. *See generally Atwell v. Merit Systems Protection Board,* 670 F.2d 272, 276–278 (D.C.Cir.1981).

The government contends that the district court lacked subject matter jurisdiction because of the CSRA, and it relies on a

decision of the D.C. Circuit, *Carducci v. Regan,* 714 F.2d 171 (D.C.Cir.1983). Carducci had been demoted, and he sought judicial review under the APA. The D.C. Circuit held that the comprehensive administrative review scheme established in the CSRA, 5 U.S.C. §§ 7701–7703, precluded direct judicial review under the APA for challenged demotions. *Carducci,* 714 F.2d at 172–175; *accord Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984); *Braun v. United States,* 707 F.2d 922 (6th Cir.1983); *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982).

The CSRA review scheme, however, pertains only to review of "adverse [personnel] actions" and "prohibited personnel practices." *Carducci,* 714 F.2d at 175. It does not apply to employees' requests for job reclassifications, which are provided for under 5 U.S.C. § 5112.[1] The legislative history of the CSRA shows that it was directed at streamlining and reforming performance appraisals and disciplinary actions. *See* S.Rep. No. 969, 95th Cong., 2d Sess. 1, 17–64, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2739–86. The special review procedures of 5 U.S.C. §§ 7701–7703 were for such actions that negatively affected employees. *Id.* at 51–64, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 2773–86.

Burroughs, in contrast, is not seeking review of such an action. He is seeking a reclassification of a position. Requests for classification changes do not challenge any individual adverse actions nor any prohibited personnel practices. They are claims that particular positions are incorrectly classified and therefore violate the equal pay for substantial equal work principle of 5 U.S.C. § 5101. The CSRA's review provisions thus would not appear to apply to classification decisions.

The D.C. Circuit before *Carducci* expressly held that classification decisions are judicially reviewable under the Mandamus Act.[2] *Haneke,* 535 F.2d 1291. The government argues that *Carducci* overruled *Haneke,* but we think not. The court in *Carducci* did not say it was overruling *Haneke,* and we find no persuasive reason to believe it intended to do so *sub silentio.* *Haneke* was a proceeding under the Mandamus Act; *Carducci* was a proceeding under the CSRA. Each proceeding sought a different avenue to a different remedy, and hence, the cases are not inconsistent. The D.C. Circuit seems to have acknowledged this, for it stated in *Bright v. Lehman,* 725 F.2d 788 (D.C.Cir.1984): "We do not interpret [*Carducci*] to preclude all actions in the nature of mandamus. In fact, the court in *Carducci* indicated that judicial review would be available to ensure that administrative review proceedings conformed to statutory mandates." *Id.* at 791 n. 5; *cf. National Treasury Employees Union v. Devine,* 733 F.2d 114, 117 n. 8 (D.C.Cir.1984) (a statutory scheme can limit

---

1. 5 U.S.C. § 5112 provides:

 (a) Notwithstanding section 5107 of this title, the Office of Personnel Management may—

 (1) ascertain currently the facts as to the duties, responsibilities, and qualification requirements of a position;

 (2) place in an appropriate class and grade a newly created position or a position coming initially under this chapter;

 (3) decide whether a position is in its appropriate class and grade; and

 (4) change a position from one class or grade to another class or grade when the facts warrant.

 The Office shall certify to the agency concerned its action under paragraph (2) or (4) of this subsection. The agency shall act in accordance with the certificate, and the certificate is binding on all administrative, certify-ing, payroll, disbursing, and accounting officials.

 (b) An employee affected or an agency may request at any time that the Office exercise the authority granted to it by subsection (a) of this section and the Office shall act on the request.

2. The *Haneke* court recognized that while the "mandamus remedy is an extraordinary one" and was to be used only under "exceptional circumstances," 535 F.2d at 1296, the case before it satisfied the requirements for mandamus because the defendant officials had a statutory duty and that duty could be enforced by the district court pursuant to section 1361. *Id.* We face a similar situation here where Burroughs contends that his job duties, as stated in his job description, comport with the standards of a GS–13 and not a GS–12.

or preclude judicial review but such a scheme does not impliedly preclude traditional judicial review and remedies for claims arising outside of it).

We hold, therefore, that the district court had jurisdiction to review the OPM decision under the Mandamus Act. We now turn to the merits of that review.

The Classification Act, 5 U.S.C. §§ 5101–5115, is designed to provide a plan for classification of federal positions so this "principle of equal pay for substantially equal work will be followed." 5 U.S.C. § 5101. The Classification Act establishes the General Schedule (GS), the basic pay schedule for positions governed by the Act, which is divided into eighteen grades of difficulty and responsibility of work. 5 U.S.C. § 5104. Federal agencies are required to place all positions under their jurisdiction in the appropriate class and grade in conformance with OPM's published standards. 5 U.S.C. § 5107. Section 5112 grants OPM general authority to decide whether positions are appropriately classified and authorizes classification appeals by affected employees or agencies to OPM. 5 U.S.C. § 5112. *See also* 5 C.F.R. § 511.603. An OPM classification decision should not be overturned by a reviewing court unless it is arbitrary and not based on substantial evidence. *See White v. United States Civil Service Commission*, 468 F.2d 1357, 1359 (9th Cir.1972); *see also Bookman v. United States*, 453 F.2d 1263, 1267–68, 197 Ct.Cl. 108 (1972) (decisions of the Civil Service Commission upheld if not arbitrary, capricious, or unsupported by substantial evidence); *Herrin v. Federal Aviation Administration*, .418 F.Supp. 889, 892 (W.D.Okla.1976) (same); *Kavazanjian v. INS*, 399 F.Supp. 339, 341 (S.D.N.Y. 1975) (same), *aff'd*, 542 F.2d 1165 (2d Cir. 1976).

The classification standards for civilian pilots, like Burroughs, are promulgated by the CSC. U.S. Civil Service Commission, Position Classification Standards—Aircraft Operation Series GS-2181 (1979) [hereafter Position Classification Standards]. These standards describe the types of duties char-

acteristic of both GS–12 and GS–13 levels. Both Burroughs and the OPM agree that a test pilot grade is controlled by the nature of the flight related duties for which the pilot is responsible. It is further apparent that the distinguishing characteristic of the flight testing duties of GS–13, as opposed to GS–12 pilots, is that the GS–13 pilots' duties involve a higher level of risk. The risk included in the duties of GS–12 pilots is minimal because "test work at the GS–12 level is characterized by a minimum degree of hazard and involves, for example, conducting flight tests of communications or navigation equipment." *Id.* at 16.

The standards for GS–13, in contrast, characterize the risk as substantial. GS–13 testing work is typified by testing aircraft with "substantially modified or repaired systems." *Id.* at 17. The risk is described as follows: "Assignments that involve testing aircraft with substantially modified or repaired systems are characterized by a substantial degree of hazard and require the application of a very high degree of skill in determining aircraft performance and flight characteristics...." *Id.* at 19–20.

Relevant to the comparison between GS–12 and GS–13 is the job description of Burroughs' own position. The job description for Burroughs' position as supervisory flight test pilot at Fort Lewis, Washington, includes testing of aircraft among his major duties. Those flight testing duties are described as follows:

> Flight tests aircraft after modification or repair, requiring a high degree of skill in determining aircraft performance and flight characteristics. Certifies aircraft as airworthy after extensive repairs. Maneuvers aircraft through stalls, autorotations, hovers, take-offs, landings, turns, climbs, glides, etc. to push aircraft to limits of technical performance specified for each model, to assure aircraft is completely airworthy with no latent defects.

Department of the Army, Job Description for Supervisory Flight Test Pilot, 1, 2

(1973). The terms are similar to those used in the CSC and GS–13 standard.

The administrative record developed before the Northwest Regional Office contained evidence of the kind of flight work which Burroughs actually did and showed that he flew planes with "substantially modified or repaired systems" within the meaning of the GS–13 standard. His test work included flight testing fixed wing aircraft after repair of a crashed wing, flight testing single rotor helicopters after engine modifications for operating under volcanic eruption conditions, and other test flights to certify airworthiness after repair, such as engine replacement, replacement of landing gear and removal and adjustment of the flight control system. The Northwest Region, in considering the degree of hazard involved in Burroughs' test flights, noted that the Department of the Army had determined that environmental differential pay of 100% was warranted for non-piloting crew members involved in test flights included in Burroughs' position. The regional office issued a classification certificate, pursuant to 5 U.S.C. § 5112(b), reclassifying Burroughs as a GS–13.

In rescinding the regional decision, the Classification Appeals Office did not take issue with any of the Northwest Regional Office's findings as to what the record reflected Burroughs did. It agreed that the major substantive issue in the case related to whether Burroughs' flight test duties met the GS 2181 standards for GS–13. OPM concluded, without specific reference to the evidence, and without specific discussion of the degree of hazard involved in the duties undertaken, that Burroughs' test flight duties did not sufficiently involve testing aircraft with "substantially modified or repaired systems" as required under the GS–13 standards. As an alternative basis for its conclusion, the OPM stated that the sample period to illustrate Burroughs' work load was an inadequate time period. The Classification Appeals Office did not attempt to relate appellant's duties to the standards for GS–12.

In reviewing the decision of the OPM, we are mindful of the limited scope of judicial review and of the considerable deference which we must pay to OPM's interpretation of the statutes it administers, including the statutes designed to assure that civil service employees receive "equal pay for substantially equal work" under 5 U.S.C. § 5101(1)(A). *See White,* 468 F.2d at 1359. In *White,* we upheld a CSC's denial of reclassification after finding that it had conducted a careful examination of appellants' positions, including a study of pertinent official job descriptions.

 In this case, however, we are persuaded that the Classification Appeals Office rescission of the decision of the Northwest Regional Office was arbitrary and unsupported by the evidence. The record demonstrates that Burroughs flew planes with "substantially modified or repaired systems" with a high degree of risk involved. This is what is required under GS–13 standards. The record does not show, nor did the Classification Appeals Office find, that the test flights involved the minimal degree of risk characterizing GS–12 positions. More important, the Classification Appeals Office made its conclusions about the nature of the flights and the inadequacy of the sample without any reference whatever to Burroughs' own job description, which stated that test flights of modified or repaired aircraft constituted a major aspect of his work and required a high degree of skill. The Classification Appeals Office, in effect, acknowledged that Burroughs' duties went beyond those required by GS–12, demanded that he prove that all of the work that he did was within the requirements of GS–13, and ignored the provisions of his job description. As we recognized in *White,* the agency should conduct a full review in classification matters, and the job description is a key element. 468 F.2d at 1359. The Classification Appeals Office's decision in this case was arbitrary and unsupported by the record.

In view of our conclusion that Burroughs is entitled to a GS–13 classification based

upon the existing record, we need not reach his contention that the OPM should be required to conduct a position to position evaluation before denying the reclassification. *See Haneke*, 535 F.2d 1291.

The judgment of the district court is reversed and the matter is remanded with instructions to grant the application for mandamus.