Joseph D. FINN, Kenneth R. Boyd, G.L. Bryant, Heinz J. Sander, David L. Brock, Julian W. Cheney, Elmore Jackson, Devere W. Tyler, Plaintiffs,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT and Donald Devine, Defendants.

Civ. A. No. 2:84–2320–1.

United States District Court,
D. South Carolina,
Charleston Division.

Dec. 31, 1986.

Andrew S. Halio, Charleston, S.C., David H. Shapiro, Washington, D.C., for plaintiffs.

Robert H. Bickerton, Asst. U.S. Atty., Charleston, S.C., for defendants.

## ORDER OF DISMISSAL

HAWKINS, District Judge.

This matter is before the court on the plaintiffs' motions for summary judgment and class certification filed August 29, 1986, and on defendants' motion to dismiss or, in the alternative, for summary judgment, filed September 4, 1986. Oral arguments were heard on September 25, 1986. Subsequently, on October 7, 1986, defendants filed their motion to file Affidavit of Robert M. Howard. The court has since reviewed the memorandums of counsel and the applicable law and makes the following rulings on all of the above motions.

This is an action for judicial review of and relief from a final decision of the defendant, U.S. Office of Personnel Management ("OPM").

Plaintiffs are eight Air Reserve Technicians ("ARTs") employed at the Charleston Air Force Base in Aircraft Loadmaster (Instructor) positions, GS-2181-08. On August 30, 1986, OPM's Atlanta (then Southeast) Regional Office ("Regional Office") received an appeal dated August 26, 1982, in which plaintiffs asked for an upgrade of their positions to "at least GS-12," an onsite audit, retroactive pay, and attorneys' fees.

On September 20, 1982, OPM's Regional Office sent an appeal acceptance letter to the plaintiffs. On that same date a request for information was sent to the Civilian Personnel Office, Charleston Air Force Base. The information requested was received by the Regional Office under cover of a letter dated November 5, 1982, from Headquarters, Air Force Reserve, Robins Air Force Base, Georgia.

On March 3, 1983, OPM's Regional Office issued a classification appeal decision, downgrading plaintiffs' positions to GS-7. Recognizing that the GS-2181 standard does not provide published grade level classification standards for Aircraft Loadmaster positions, the Regional Office based its decision, in part,[1] on a cross-application comparison of the published classification standards for the position of Marine Cargo specialist, GS-2161.

By letter to OPM's Classification Appeals Office ("CAO") dated April 11, 1983, Headquarters, United States Air Force ("USAF"), requested that action to implement the classification appeal decision be deferred, or that the decision be reconsidered. On April 15, 1983, CAO sent a reconsideration acceptance letter to Headquarters, USAF. This letter suspended the decision by OPM's Regional Office and requested a more detailed rationale from the USAF for its disagreement with the appeal decision. A more detailed rationale was submitted by Headquarters, USAF, to CAO, on May 11, 1983.

On April 18, 1983, CAO received a letter from legal counsel engaged by the plaintiffs to represent them in this matter requesting that the decision be suspended and reconsidered. On April 28, 1983, CAO sent a letter to plaintiffs' counsel, accepting the reconsideration request and informing them of the reconsideration request from the USAF. A copy of the letter from plaintiffs' counsel was sent to OPM's Regional Office.

On May 27, 1983, the Regional Office received a compliance report dated May 23, 1983, from Charleston Air Force Base. The Charleston Air Force Base personnel office was advised by telephone that the decision had been suspended pendings its reconsideration.

On June 13, 1983, plaintiff Finn sent CAO additional information in support of his appeal. This information, as well as the Headquarters USAF rationale, which CAO had previously received, was subse-

---

1. In reaching its decision, the Regional Office also referred to the OPM Factor Evaluation System Position Classification Standard, Instructor Grade Evaluation Guide, October 1982.

quently forwarded to OPM's Regional Office for comments. In addition to this information, on November 7, 1983, CAO received and accepted an appeal addendum from plaintiffs' counsel.

On December 15, 1983, CAO received a memorandum from the OPM Regional Office under cover of which the case file and comments were provided. The memorandum stated that a visit to Charleston Air Force Base had been made and that there had been performed a ten-hour audit on a C–141 aircraft where plaintiffs' work was performed. The Regional Office reaffirmed its decision that the positions should be at the GS–7 level.

On January 9, 1984, after reviewing the above-referenced materials, CAO reversed the OPM Regional Office, finding that the correct classification of plaintiffs' positions was GS–8.

Thus stymied in their quest for reclassification, the plaintiffs now seek judicial review of OPM's final classification decision in this court pursuant to the Mandamus Act of 1962, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"). In their complaint the plaintiffs allege that OPM has violated the Classification Act, 5 U.S.C. § 5101 et seq., by failing for sixteen years to promulgate classification standards for persons employed by the United States Air Force Reserves and the Air National Guard as civilians in the position of ART Aircraft Loadmaster (Instructor). As a further allegation, the plaintiffs claim that, in any event, OPM's classification of the position at the GS–8 level on the basis of the published standards for Marine Cargo specialists is arbitrary and capricious, not supported by substantial evidence, and otherwise contrary to law. Based on these allegations, the plaintiffs seek an order compelling OPM to promulgate and publish proper classification standards specifically for their job and setting aside the decision of OPM to grade plaintiffs at the GS–8 level as unsupported by substantial evidence, arbitrary and capricious, and otherwise unlawful. In addition, plaintiffs seek an order compelling OPM to set their grade at the GS–11 level based on the evidence contained in the Administrative Record until grading of the position can be done under the new standards.

Subsequent to filing the instant mandamus action in federal court, the plaintiffs also filed a complaint with the Office of Special Counsel ("OSC") [2], alleging that officials at OPM had engaged in a prohibited personnel practice when they refused to prepare standards for the Aircraft Loadmaster position and to reclassify the position to a higher grade and pay. By letter dated September 8, 1986, OSC recently informed the plaintiffs that it found no evidence of any prohibited personnel practice to warrant consideration by the Merit Systems Protection Board ("MSPB"). Accordingly, OSC has "closed [its] file in this matter."

In support of their motion to dismiss defendants contend, among other things, that pursuant to the landmark decision rendered by the United States Court of Appeals for the District of Columbia Circuit in *Carducci v. Regan*, 714 F.2d 171 (D.C.Cir. 1983), this court lacks subject matter jurisdiction over the case.

In opposition, the plaintiffs argue that *Carducci* and the progeny of cases which followed that decision are distinguishable from the present action and that, in any event, they were wrongly decided to the extent that they precluded judicial review of the specific classification decisions in dispute in those actions. In addition, plaintiffs submit that nothing in the CSRA alters their pre-existing right to seek to mandamus OPM to carry out a function which, plaintiffs claim, the Classification Act requires that agency to perform. Finally, plaintiffs contend that "their claim arises 'independently of the CSRA' because it is brought under a separate statute, the Clas-

**2.** OSC is an entity created by the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified, as amended, in scattered sections of 5 U.S.C. (1982)), ("CSRA") to investigate Federal Civil Service employees' complaints and to bring meritorious claims before the Merit Systems Protection Board.

sification Act, and therefore the CSRA (by means of [OSC]) is not the exclusive remedial avenue for employees adversely affected by a classification decision." *Barnhart v. Devine,* 771 F.2d 1515 (D.C.Cir.1985).

■ It is true, as the plaintiffs argue, that prior to the enactment of the CSRA classification decisions were judicially reviewable under both the APA and the Mandamus Act. *See United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Haneke v. Secretary of Health, Education and Welfare,* 535 F.2d 1291 (D.C.Cir.1976). However, this court concludes that plaintiffs' argument that employee challenges to Civil Service position classification decisions are still subject to judicial review no longer rings true in this, the post-CSRA world. This conclusion is based namely on a trilogy of unbinding, but yet persuasive, post-CSRA D.C. Circuit cases.

In the seminal case of *Carducci,* the plaintiff

> had been demoted, and he sought judicial review under the APA. The D.C. Circuit held that the comprehensive administrative review scheme established in the CSRA, 5 U.S.C. §§ 7701–7703, precluded direct judicial review under the APA for challenged demotions. *Carducci,* 714 F.2d at 172–175; *accord Veit v. Heckler,* 746 F.2d 508 (9th Cir.1984); *Braun v. United States,* 707 F.2d 922 (6th Cir. 1983); *Broadway v. Block,* 694 F.2d 979 (5th Cir.1982).

*Burroughs v. Office of Personnel Management,* 764 F.2d 1300, 1302 (9th Cir.1985), *reh'g denied* 784 F.2d 933 (9th Cir.1986). The comprehensive review scheme which the court held to be established in the CSRA was described as follows:

> (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with

the statutory requirement that the OSC perform an adequate inquiry," *Cutts v. Fowler, supra,* 692 F.2d [138] at 140; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.

*Carducci,* 714 F.2d at 175.

Some two years later, the D.C. Circuit in *Barnhart* extended its ruling in *Carducci* to the field of position classification.

In *Barnhart,* several GS–12 National Weather Service (NWS) employees requested OPM to compare their duties to the duties of other NWS employees who were classified as GS–13s. OPM refused to make position-to-position comparisons. The employees sought a writ of mandamus in the district court, alleging violations of Chapter 51 of Title 5 of the United States Code. The district court dismissed and the D.C. Circuit affirmed. The D.C. Circuit's restatement of the district court's opinion summarizes the D.C. Circuit's reasoning:

> In the District Court's view, the gravamen of appellants' complaint was that the Department of Commerce and OPM had engaged in a "prohibited personnel practice," as defined by the [CSRA], and that, in consequence, the employees were required to present their grievance to the Office of Special Counsel, .... The District Court further concluded that appellants' mandamus petition would properly lie only against the Office of Special Counsel, if that entity failed or refused to carry out its responsibility to determine whether reasonable grounds supported their allegations. We agree with the District Court's analysis and therefore affirm.

*Burroughs,* 784 F.2d at 934–35. Thus, despite the fact that *Carducci,* which did not involve a claim of violation of the Classification Act, was a proceeding under the CSRA and not the Mandamus Act, the D.C. Circuit on the basis of *Carducci* rejected the employees' argument that *Haneke* (holding that classification decisions are ju-

dicially reviewable under the Mandamus Act) survived passage of the CSRA. Accordingly, *Barnhart* became the first case to hold that classification decisions of the OPM are not subject to judicial review.

The third decision of the D.C. Circuit which considered whether the CSRA precludes judicial review of certain personnel actions is *National Treasury Employees Union v. Egger*, 783 F.2d 1114 (D.C.Cir. 1986). In *Egger* certain Internal Revenue Service employees sought judicial review pursuant to the APA of a decision by the IRS to reclassify their positions from the Prevailing Rate pay category to the General Schedule pay system. The decision to reclassify the jobs in this way resulted from the revision and amendment by OPM's predecessor agency, the Civil Service Commission ("CSC"), of existing classification standards in accordance with its powers under the Classification Act. These IRS employees "urged that the reclassification was arbitrary, capricious and contrary to 5 U.S.C. §§ 5102(c)(7) and 5342(a)(2)(A),[3] and therefore was in violation of the APA." *Egger*, 783 F.2d at 1115. In reviewing these allegations the appellate court stated:

> We agree that appellants' claims can constitute a minor personnel action under the second category of *Carducci* and are properly appealable, at least in the first instance, to OSC.... The district court correctly invoked 5 U.S.C. § 2302(b)(11); under that provision, a personnel action is prohibited if the action "violates any law, rule or regulation implementing or directly concerning, the merit systems principle contained in section 2301...."

In this case, appellants have asserted a violation of law under the Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 471, codified at title 5, United States Code. This statute implements merit system principles prohibiting "arbitrary action" (§ 2301(b)(8)(A)), insuring "fair and equitable treatment in all aspects of personnel management" (§ 2301(b)(2)) and providing "equal pay ... for work of equal value" (§ 2301(b)(3)). These merit system principles would trigger OSC's jurisdiction over appellants' claims.

*Egger*, 783 F.2d at 1116 (footnote omitted). Thus, it was held by the D.C. Circuit that it lacked subject matter jurisdiction inasmuch as this particular pay category reclassification was a minor personnel action precluded from judicial review by the CSRA.

Aware of the line of precedents which this court has reviewed, the plaintiffs cite the cases of *National Treasury Employees Union v. Devine*, 733 F.2d 114 (D.C.Cir. 1984) and *Burroughs v. Office of Personnel Management*, 764 F.2d 1300 (9th Cir. 1985), *reh'g denied* 784 F.2d 933 (9th Cir. 1986), for the proposition that the decisions extending *Carducci* into the classification arena are both distinguishable and, in the end, wrongly decided.

Unfortunately for the plaintiffs, however, their reliance on these two cases is misplaced. In *Devine* the NTEU brought suit challenging as null and void certain regulations affecting changes in federal personnel reduction-in-force procedures. Rejecting the argument that the CSRA precluded judicial review of that case, the court held that the detailed scheme of administrative review does not apply to pre-enforcement judicial review of rules. *NTEU v. Devine*, 733 F.2d at 117.

*Egger*, 783 F.2d at 1117. Based on the holding in *Devine*, the plaintiffs argue that although the D.C. Circuit in *Egger* sought to harmonize its no-review decision with its review ruling in *Devine* by claiming that the latter involved something akin to "rulemaking," while the dispute in *Egger* "is merely a challenge to the application of an existing rule and thus within the CSRA scheme of review," 783 F.2d at 1117, this

---

**3.** Section 5102(c)(7) is a part of the Classification Act and Section 5342(a)(2)(A) is a part of the statutory scheme governing Federal employees subject to the Prevailing Rate pay system. Both sections provide in pertinent part that "the General Schedule does not govern the pay of: employees in recognized trades or crafts, or other skilled mechanical crafts, or in unskilled, semiskilled, or skilled manual-labor occupations, and other employees including foremen and supervisors in positions having trade craft, or laboring experience and knowledge as the paramount requirement...."

distinction is dubious at best. Furthermore, they contend that, even if the distinction was a viable one, it would avail the defendants not at all here because the government mischaracterizes plaintiffs' claims when it seeks to analogize them to the challenge to the application of an existing rule that was at issue in *Egger.* To the contrary, they submit that there is no existing rule here and, as such, this action is far more akin to the rulemaking actions in *Devine* than to the personnel actions involved in *Carducci, Egger* and *Barnhart.*

This court disagrees for two reasons. The first is that the court believes that the opinions rendered by the D.C. Circuit in *Devine* and *Egger* are not in conflict. The distinction between the rulemaking action involved in *Devine* and the action in *Egger,* involving a challenge to the application of an existing rule, is a legitimate one. Secondly,

> [a]lthough the case at bar concerns a classification matter, the action here in dispute does not involve the validity of a general rule or a rulemaking subject to judicial review as did the action in *NTEU v. Devine.* Rather, the current suit is merely a challenge to the application of an existing rule [4] and thus within the CSRA scheme of review.

*Egger,* 783 F.2d at 1116.

Having distinguished the *Devine* decision, this court is likewise persuaded that plaintiffs' reliance on *Burroughs* is erroneous due to the Ninth Circuit's subsequent disposition of its initial decision in that case. As in the instant case, the employee in *Burroughs* was in court seeking a review and reversal of an OPM position classification action. In considering the very same no-jurisdiction argument, which has once again been raised by the government in this action, the Ninth Circuit in its initial decision first distinguished the situation in *Carducci* by noting that the D.C. Circuit's case involved adverse personnel action under the CSRA and not a classification decision as in *Burroughs.* In light of this distinction, the Ninth Circuit rejected the

argument that *Carducci* overruled *Haneke* (holding that classification decisions are judicially reviewable under the Mandamus Act). Accordingly, that court held that "the district court had jurisdiction to review the OPM's decision under the Mandamus Act, 28 U.S.C. § 1361." *Burroughs,* 784 F.2d at 933.

Subsequent to this decision, however, the government filed a petition for rehearing, asking that the Ninth Circuit set aside its decision and follow the D.C. Circuit's opinion in *Barnhart,* which had been filed approximately one month after the Ninth Circuit's initial decision in *Burroughs.* Although the Ninth Circuit ultimately denied the government's petition for a rehearing, it was made clear in that court's rehearing decision that its ruling was based on the procedural posture of the case. To reconsider the earlier decision in light of the subsequent decision of the D.C. Circuit in *Barnhart* was viewed as unfair to the plaintiff in view of the years of protracted administrative and judicial proceedings through which he had already suffered. In addition, the government in *Burroughs,* unlike the government in the instant action, originally agreed that the district court should review the decision of the OPM. In its decision on the petition for rehearing, the Ninth Circuit stated:

> Our denial of rehearing in this case, however, does not preclude this Circuit from considering the *Barnhart* decision in cases which may follow this one, and in which this court can decide on the basis of a fully developed record the questions raised by that opinion. Since our opinion was entered before *Barnhart,* it cannot be regarded as either agreeing or disagreeing with the District of Columbia Circuit. Our decision to deny rehearing is therefore without prejudice to the government's litigating in another case the issues raised in its petition for rehearing and discussed in Judge Beezer's dissent to the denial of rehearing.

4. The plaintiffs challenge OPM's failure to issue published classification standards and its refusal to reclassify plaintiffs' position as violations of the Classification Act, a law which has been in existence since 1949.

*Burroughs,* 784 F.2d at 934. Moreover, this court takes notice of Circuit Judge Beezer's well-reasoned dissent to which the majority opinion specifically refers. Judge Beezer's dissent, which is the only statement of the Ninth Circuit to date dealing with judicial review of classification decisions in light of both *Carducci* and *Barnhart,* expressly adopts the *Barnhart* holding and thus clearly supports the government's position in this matter.

After a clear reading of the authorities outlined above, as well as a review of the statutory language of the CSRA itself, this court is persuaded that classification decisions are subject to the limited remedies provided under the CSRA. Implicit within this conclusion is a finding of clear Congressional intent to restrict access to judicial review to the extent allowed by the operative statute. Consequently, this court must next determine under which category outlined in *Carducci* the plaintiffs' claims fall.

■ In the court's view, the plaintiffs' complaint constitutes an allegation of a prohibited personnel practice.

Section 2302(a)(1) of Title 5 of the U.S. Code states that for the purpose of Title 5, "prohibited personnel practice" means any action described in section 2302(b). 5 U.S.C. § 2302(a)(1). Section 2302(b)(11) states that:

> [a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action shall not, with respect to such authority ... take or fail to take any other personnel action if the taking or failure to take such action violates any law, rule, or regulation implementing, or directly concerning the merit system principles contained in section 2301 of this title.

5 U.S.C. § 2302(b)(11). The definition of "prohibited personnel practice" contained in section 2302(b)(11), therefore, requires the existence of five elements: 1) the defendant must have the authority to take, recommend, or approve an action,

2) the defendant must have taken or failed to have taken such action, 3) the action or inaction must be a "personnel action," 4) the law, rule, or regulation that the action or inaction allegedly violates must implement or directly concern a merit system principle, and 5) the action or inaction in fact must violate such law, rule, or regulation.

*Burroughs,* 784 F.2d at 935 (Beezer, J., dissenting). *See also, Barnhart,* 771 F.2d 1515.

■ OPM clearly had the authority to issue published standards for the Loadmaster position and to reclassify that position. 5 U.S.C. §§ 5105 *et seq.* OPM's failure to promulgate such standards and its refusal to reclassify the plaintiffs' jobs, both allegedly done in violation of the Classification Act, are the gravemen of the plaintiffs' complaint.[5]

The only remaining questions raised by section 2302(b)(11), therefore, are whether OPM's [actions] constituted a personnel action, whether the classification provisions of Chapter 51 of Title 5 of the U.S. Code "directly concern" merit system principles as enumerated in section 2301, and whether [such actions] violated the provisions of Chapter 51. If the first two of the remaining issues are answered affirmatively, the question of violation is for the Office of Special Counsel and the Merit System Protection Board to decide. *Barnhart,* 771 F.2d at 1526 n. 20; *Carducci* at 175.

Section 2302(a)(2)(A) defines a personnel action, inter alia, as "a decision concerning pay, benefits, or awards ..." 5 U.S.C. § 2302(a)(2)(A)(ix). *Burroughs,* 784 F.2d at 936. The action taken by the OPM in this case is a decision concerning pay or benefits, *see id.* at 936 and n. 2; *Barnhart,* 771 F.2d 1515; and, as such, is a personnel action within the definition of 5 U.S.C. § 2302(a)(2)(A).

In addition to constituting a personnel action, the OPM's actions allegedly violate certain sections of the Classification Act, a

---

**5.** Included in the plaintiffs' allegations that the OPM illegally refused to reclassify their position is a claim that OPM further violated the Classification Act by basing the present classification of the Loadmaster position on a position-to-position comparison.

law which implements merit system principles insuring "fair and equitable treatment in all aspects of personnel management," 5 U.S.C. § 2301(b)(2), and providing "equal pay ... for work of equal value," 5 U.S.C. § 2301(b)(3). Action or inaction under the pertinent sections of the Classification Act, therefore, "implicates these merit system principles and triggers the provisions governing the prohibited personnel practices." *Burroughs,* 784 F.2d at 936.

■ Turning to these provisions, it is clear that the plaintiffs' complaint should have been brought initially before the OSC. The need for initial recourse to the OSC is now moot, however, inasmuch as the plaintiffs have filed a complaint with the OSC since the commencement of this lawsuit. Despite the plaintiffs' eleventh-hour application to the OSC, this court still lacks the authority to exercise its mandamus power against the OPM. Under the teachings of *Carducci* and *Barnhart,* once an aggrieved employee has filed a complaint with the OSC he may

> seek a writ of mandamus to compel the OSC to investigate [that] complaint[6] and,

in addition, may seek limited judicial review of the OSC's determination that the complaint does not merit the Board's consideration. In the latter instance, judicial review is limited to determining whether the Special Counsel's investigation of the complaint constituted an adequate discharge of the Office's responsibilities under the CSRA. *See Carducci, supra,* 714 F.2d at 175 (citing *Cutts, supra,* 692 F.2d at 140). While limited, that review nonetheless enables the court to determine whether the Office of Special Counsel had adequate information upon which to base its determination. *Barnhart,* 771 F.2d at 1526 (footnote omitted). In the present case, the plaintiffs have failed to utilize either of these alternative remedies. The plaintiffs' complaint does not seek a writ of mandamus to compel OSC to investigate their complaint nor does it seek review of OSC's compliance with the statutory requirement of conducting an adequate inquiry. Plaintiffs' failure to utilize these alternative remedies precludes the availability of a writ of mandamus[7] to compel the OPM to issue published

---

**6.** "We need not here plumb the procedural depths of whether, under the particular statutory structure of the CSRA and the Classification Act, mandamus jurisdiction would lie with the District Court pursuant to the Mandamus Act, 28 U.S.C. § 1361 (1982), or with the Federal Circuit pursuant to the Federal Courts Improvement Act, 5 U.S.C. § 7703(b)(1) (1982). *See Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C.Cir.1984)." *Barnhart,* 771 F.2d at 1524 n. 15.

**7.** This finding still holds true in the face of plaintiffs' contention that, despite the intervening passage of the CSRA, mandamus is still available to remedy situations in which the OPM refuses to perform a ministerial act which it is required by law to perform. Plaintiffs argue that by virtue of 5 U.S.C. § 1505 the OPM, as successor to the CSC, is *required* to issue published classification standards for their position; thus, plaintiffs argue, such publication constitutes a ministerial act. Their argument further runs that mandamus is the appropriate judicial vehicle by which to proceed, inasmuch as the requested publication is a ministerial function that the OPM is required to carry out but which it has studiously refused to perform. Citing *Haneke,* 535 F.2d 1291, plaintiffs conclude that mandamus is still available despite passage of the CSRA.

This court cannot agree with plaintiffs' understanding either of the function of mandamus or the role of the OSC. It is, of course, elementary that mandamus is an extraordinary form of relief which lies only when no adequate alternative remedy exists. *See e.g., Allied Chemical Corp. v. Daiflon,* 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). As this court has been, OPM is not the exclusive remedial situs for employees faced with adverse classification determinations. Plaintiffs should have sought, and did seek, recourse through the OSC. Had the OSC utterly failed to take action, mandamus would then lie to compel OSC to perform its statutory duty. In *Wren v. Merit Systems Protection Board,* 681 F.2d 867 (D.C.Cir.1982), the court observed that

[d]espite substantial precedent to the effect that federal mandamus does not ordinarily lie under 28 U.S.C. § 1361 to compel prosecutions or even investigation .. we cannot so easily conclude that Congress meant to provide no means to enforce the OSC's failure to perform a ministerial duty, i.e., to investigate or to screen to some degree employee complaints which allege prohibited personnel practices. The CSRA contains an unequivocal statutory mandate, incorporated into the OSC's own regulations, [requiring that the Special Counsel] "receive and ... investigate allegations of prohibited personnel practices."

classification standards and to reclassify the plaintiffs' job in accordance therewith.

In view of this finding, and based on the fact that OPM's classification decision constitutes an alleged prohibited personnel practice, this court must dismiss the plaintiffs' complaint for lack of subject matter jurisdiction. Inasmuch as this ruling necessarily ends the inquiry of this court, all other pending motions are moot. It is, therefore,

ORDERED, that this action be, and the same is hereby, dismissed.

AND IT IS SO ORDERED.

Thus, it is clear that Congress did not intend for the OSC to be circumvented by means of mandamus against the allegedly errant OPM. *See Barnhart,* 771 F.2d 515.