882 F.2d 447
 Andrew B. KARAMANOS, Plaintiff-Appellant,
v.
Roscoe L. EGGER, Jr., Commissioner of Internal Revenue;
David Blackorby; Richard Welcome; Internal Revenue
Service; T. Blair Evans; Joseph Lippi; Jack Sweet;
Carolyn Leonard, Defendants-Appellees.
 No. 87-3629.
 United States Court of Appeals,
Ninth Circuit.
 Argued June 7, 1988.
Submitted June 5, 1989.
Decided Aug. 16, 1989.
 
 James S. Coon, Imperati, Barnett, Sherwood, and Coon, Portland, Or., for plaintiff-appellant.
 Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before HUG, FLETCHER and NELSON, Circuit Judges.
 NELSON, Circuit Judge:
 
 
 1
 Mr. Karamanos is an IRS agent classified at a GS-12 level. He spent much of his time on GS-13 work over several years. Finding this situation unfair, he applied for reclassification. In response, defendant Welcome transferred all GS-13 work away from Karamanos. Karamanos' request for reclassification was not acted upon. He therefore appealed to the Office of Personnel Management (OPM), which ruled that reclassification was inappropriate based on only a single GS-13 case, even though that case occupied most of Karamanos's time. OPM refused to reconsider this decision.
 
 
 2
 Having failed to change his job classification, Karamanos applied for a recently created job opening at the GS-13 level. Although he was among the final group considered, he did not get the job. Believing he was denied the position because of a bias against agnostics and in retaliation for an Equal Employment Opportunities Commission (EEOC) complaint that he had once filed, Karamanos complained to the EEOC that his job application had been rejected improperly. He also filed a Freedom of Information Act (FOIA) request for notes taken about his application. These notes were provided. He later submitted a second FOIA request for similar notes taken about other job applicants, so that he could prove his discrimination claims before the EEOC. This request was denied because the notes had been destroyed. Eventually, the EEOC ruled against Karamanos. He did not appeal because, he says, without the interview notes on the other applicants, he cannot prove his claim.
 
 
 3
 Soon after learning that the interview notes were destroyed, Karamanos filed the complaint in this case alleging three claims for relief: (1) the decision not to reclassify him was arbitrary and capricious in violation of the Administrative Procedures Act; (2) the decision not to reclassify him violated a duty owed by the government that is redressable by mandamus; and (3) the destruction of documents by the government was intended to interfere with and to deter Karamanos' EEOC suit in violation of his first amendment right to seek redress from the government, and of his fifth amendment right to due process. Karamanos does not challenge the EEOC decision that he was not discriminated against in hiring.
 
 
 4
 After Karamanos filed the complaint in this case, he was subjected to a series of adverse actions that he believes were retaliations for pursuing his remedies before the EEOC and in federal court. He discovered a letter from the Chief of the Criminal Investigations Division, defendant Blackorby, to the IRS Regional Counsel stating that Blackorby and the Portland District Director, defendant Evans, wanted to deter Karamanos from any further "unjustified grievances." Soon after this letter was sent, Evans initiated an investigation about whether Karamanos disclosed to his attorney any confidential IRS documents in connection with this suit. After completing the investigation, Evans decided to fire Karamanos for having disclosed confidential information, and for having denied making these disclosures. However, before he could fire Karamanos, Evans retired. Evans was replaced by defendant Leonard, who reduced the penalty to a three-day suspension.
 
 
 5
 Karamanos filed an EEOC complaint about this suspension and also moved to amend his complaint in this case to add a fourth claim. This claim alleged that the suspension was a retaliatory discipline violating his first amendment right to seek redress of grievances.
 
 
 6
 Defendants then moved for summary judgment. They claimed that no constitutional violation occurred. They disputed Karamanos' third claim for relief by explaining that the notes had been destroyed under a policy of not saving such notes. According to the defendants, the EEOC investigator who considered Karamanos' complaint about not being hired for the GS-13 job had access to all of the interview notes. Because Karamanos had requested notes from his own interview, these were given to him after the EEOC investigator was finished examining them. The other notes were returned to Blackorby, who was told by the personnel director that such notes were routinely discarded. Blackorby then destroyed the notes before Karamanos made his second FOIA request.
 
 
 7
 The government disputed Karamanos' fourth claim for relief by explaining that the three day suspension was not retaliatory, but was fully justified. Apparently, Karamanos attempted to sanitize all documents before giving them to his attorney by eliminating taxpayers' names from the documents. However, on one document, Karamanos allegedly failed to delete a name. Not knowing of this error, he falsely stated that he had disclosed no names. Leonard found that this unintentional disclosure merited a three-day suspension because Karamanos should have consulted a disclosure officer before disclosing documents, even if he believed them to be sanitized, and because Karamanos should have investigated when asked whether any names had been disclosed mistakenly.
 
 
 8
 Karamanos argued that both explanations were pretexts. He contended that Blackorby knew Karamanos needed the notes, and destroyed them to impede the investigation and to deter further appeals. He also stated that any infraction of rules was merely technical, and that he would not have received a suspension for such a technical violation but for the pursuit of his constitutional and statutory rights.
 
 
 9
 As an alternative justification for summary judgment, the government argued that even if a constitutional violation could be alleged, Karamanos' sole avenue of relief was provided by the Civil Service Reform Act (CSRA), and that a constitutional suit for damages was disallowed by the Supreme Court's holding in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Therefore, the third and fourth claims for relief were properly dismissed. The first two claims were also properly dismissed, the government contended, because plaintiff could not seek review of his classification decision without naming the Office of Personnel Management as a party.
 
 
 10
 The court granted Karamanos' motion to amend the complaint, and then granted the motion for summary judgment, stating only that summary judgment was appropriate based on Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), and Otto v. Heckler, 781 F.2d 754 (9th Cir.1986). When Karamanos sought clarification of this ruling, the district court added that OPM was a necessary defendant, that mandamus jurisdiction was inappropriate because Karamanos had not appealed the adverse EEOC decision, that Karamanos had not demonstrated that the interview notes were crucial evidence to such an appeal, and that Karamanos had not raised a genuine issue of fact concerning the three day suspension. The district court refused to reconsider this decision. Karamanos timely appeals.
 
 STANDARD OF REVIEW
 
 11
 We review grants of summary judgment de novo, upholding them only if, viewing the evidence in the light most favorable to the appellant, no issue of material fact exists. See David v. United States, 820 F.2d 1038, 1039-40 (9th Cir.1987).
 
 
 12
 I. Reviewability of the Reclassification Decision
 
 
 13
 The district court refused to consider Karamanos' first and second causes of action for review of the decision not to reclassify his position. It found that because the Office of Personnel Management, not the IRS, refused to reclassify his position, OPM was a necessary party. Because Karamanos failed to name OPM in this suit, the district court dismissed. Karamanos does not challenge this decision. However, he states that he will simply amend his complaint to include OPM if the court of appeals finds that review is not otherwise precluded. Therefore, we must consider whether review would be appropriate once OPM is a party.
 
 
 14
 Appellees argue that review is inappropriate on the ground that Karamanos failed to exhaust administrative remedies available to him. They contend that Karamanos could have appealed his case to the Office of Special Counsel (OSC), which would then have investigated his claim to decide whether he was improperly classified. According to appellees, OSC could then have instituted proceedings before the Merit Systems Protection Board (MSPB). Under the CSRA, these procedures are available only to redress adverse actions and prohibited personnel practices. Whether in fact Karamanos could have sought relief from OSC, and then perhaps from MSPB presents a question of first impression in this circuit. However, several prior cases affect our analysis.
 
 
 15
 In Burroughs v. Office of Personnel Management, 764 F.2d 1300 (9th Cir.1985), this circuit considered whether mandamus review was available to a federal employee who sought to have his classification changed from GS-12 to GS-13. The plaintiff had petitioned OPM for reclassification, which it initially granted. The reclassification was then denied by the Classifications Appeals Office. Plaintiff sought mandamus review, and the government objected that the district court lacked jurisdiction. It argued that the comprehensive nature of the CSRA precludes federal court review of decisions for which the CSRA does not provide remedies. The government relied on cases finding that disciplinary actions and adverse performance appraisals for which no CSRA remedies were available were decisions committed to agency discretion by law. See Veit v. Heckler, 746 F.2d 508 (9th Cir.1984); Carducci v. Regan, 714 F.2d 171 (D.C.Cir.1983). We rejected these arguments in Burroughs, and permitted mandamus relief for an allegedly incorrect classification decision. We held that reclassifications, unlike disciplinary actions and performance appraisals, were reviewable because the CSRA contained no evidence of congressional intent to commit reclassification decisions to agency discretion. We relied in part on our belief that the D.C. Circuit had adopted this same position. See Burroughs, 764 F.2d at 1302 (citing Haneke v. Sec. of Health, Ed. and Welfare, 535 F.2d 1291 (D.C.Cir.1976)).
 
 
 16
 Under Burroughs, this case would be simple to decide. Burroughs held that reclassification decisions could be reviewed in federal court on mandamus jurisdiction, because the complex rules announced in the CSRA provided neither procedures that must be exhausted prior to federal court consideration, nor reason to believe that Congress intended to commit classification decisions to agency discretion. However, the parties in Burroughs filed a petition for rehearing asking the court to reconsider the decision in light of Barnhart v. Devine, 771 F.2d 1515 (D.C.Cir.1985), a case decided one month after Burroughs.
 
 
 17
 In Barnhart, the D.C. Circuit considered whether an employee could obtain mandamus review of an adverse reclassification decision. It concluded that such review was not available to the particular plaintiff because he had not exhausted his administrative remedies. It held that allegations of improper classification were not, as had been supposed by the court in Burroughs, excluded from agency review under the CSRA. To the contrary, misclassification claims themselves allege prohibited personnel practices that entitle employees seeking reclassification to inquiry by the OSC, and then if appropriate to review by the MSPB. Barnhart, 771 F.2d at 1523. The court reached this conclusion by pointing out that improper classifications can violate various statutes "embodying a merit system principle," and that these misclassifications therefore constitute prohibited personnel practices.
 
 
 18
 Although this holding made unnecessary any inquiry into whether classification decisions were committed to agency discretion by law, the court made clear that we had misinterpreted its position. Only limited judicial review is available to determine if OSC complied with its statutory duty. Mandamus jurisdiction "has not been rendered entirely unavailable by the CSRA; by providing a new avenue of review, the CSRA altered the point at which mandamus potentially becomes available--the point at which no alternative remedy is available." Id. at 1527.
 
 
 19
 In arguing that the Ninth Circuit should reconsider Burroughs, the government pointed out that under Barnhart, inappropriate classifications are prohibited personnel practices that can be remedied under the CSRA. Therefore, the CSRA provides substantial remedies for classification decisions, including the possibility of judicial review. Mandamus is not permitted before the plaintiff exhausts the remedies made available for prohibited personnel practices under the CSRA.
 
 
 20
 The Burroughs panel did not grant the petition for rehearing, because, it said, even assuming we agree with the position of Barnhart, "we would unfairly require this appellant to try to institute new administrative remedies after years of protracted administrative and judicial proceedings." 784 F.2d at 934. It then noted that this denial of rehearing, and indeed the original opinion, should not affect later Ninth Circuit decisions:
 
 
 21
 Our denial of rehearing in this case, however, does not preclude this Circuit from considering the Barnhart decision in cases which may follow this one, and in which this court can decide on the basis of a fully developed record the questions raised by that opinion. Since our opinion was entered before Barnhart, it cannot be regarded as either agreeing or disagreeing with the District of Columbia Circuit. Our decision to deny rehearing is therefore without prejudice to the government's litigating in another case the issues raised in its petition for rehearing and discussed in Judge Beezer's dissent to the denial of rehearing.
 
 
 22
 Id. Judge Beezer's dissent from the denial of rehearing adopted the arguments set out by the D.C. Circuit in Barnhart.
 
 
 23
 The order entered by the panel in response to the petition for rehearing specified that the holding was to be limited to the facts of that case and not to be considered as precedent for future panels considering the issues raised in the petition for rehearing. With this construction by the panel of its prior opinion, we conclude that whether additional administrative remedies are available under the CSRA for misclassifications is an open question.[1]
 
 
 24
 We are convinced that additional administrative remedies are available to Karamanos. In so holding, we follow the reasoning set out in Judge Beezer's dissent from the denial of reconsideration in Burroughs, and in the Barnhart opinion. Alleged misclassifications are prohibited personnel practices under CSRA. Burroughs, 784 F.2d at 935-36. Personnel practices are prohibited if they violate a "law, rule, or regulation implementing, or directly concerning, the merit system principles." 5 U.S.C. Sec. 2302(b)(11). Classifications decisions are personnel decisions because they concern pay, and because the code defines personnel decisions as decisions "concerning pay, benefits, or awards." 5 U.S.C. Sec. 2302(a)(2)(A)(ix). Additionally, classification decisions are personnel decisions because they concern "a significant change in duties or responsibilities." 5 U.S.C. Sec. 2302(a)(2)(A)(x). Classification decisions concern the merit system principle that "[e]qual pay should be provided for work of equal value." 5 U.S.C. Sec. 2301(b)(3). See Barnhart, 771 F.2d at 1518 n. 3, 1523 & n. 12.
 
 
 25
 We affirm the dismissal of Karamanos' first two causes of action seeking review of the reclassification decision on the ground that he failed to exhaust his administrative remedies.
 
 II. CSRA Limitations on Bivens Actions
 
 26
 In his third and fourth causes of action, appellant claims that the government violated his first amendment right to seek redress against the government by destroying evidence needed to prove his discrimination claim, and by demoting him in retaliation for pursuing his legal rights. The district court dismissed these claims on the ground that appellant is restricted to his statutory remedy under the Civil Service Reform Act (CSRA).
 
 
 27
 In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that individuals whose constitutional rights are violated may sue federal officials for damages under the Constitution without specific statutory authority. The Court has limited the right to sue directly under the Constitution if Congress provides an alternate remedy that is equally effective and Congress states that the statutory remedy should be exclusive, Carlson v. Green, 446 U.S. 14, 18-19, 100 S.Ct. 1468, 1471-1472, 64 L.Ed.2d 15 (1980), or if special factors counsel hesitation. Id.
 
 
 28
 One special factor that has counseled hesitation to permit Bivens suits is the existence of an elaborate statutory procedure for protecting government employees from unfair government action. In Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court held that a federal employee who was demoted because he criticized a government agency could not sue government officials for violation of his first amendment rights. The employee could seek redress under the CSRA. The Court commented:
 
 
 29
 [g]iven ... the comprehensive nature of the remedies currently available, it is clear that the question we confront today is quite different from the typical remedial issue confronted by a common-law court. The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.
 
 
 30
 Id. at 388, 103 S.Ct. at 2416.
 
 
 31
 Until recently, the Ninth Circuit had interpreted Bush as only foreclosing a Bivens action where Congress has provided a "meaningful" alternative remedy. See Kotarski v. Cooper, 799 F.2d 1342 (9th Cir.1988) (holding that a probationary employee who was limited by the CSRA to discretionary relief for his alleged constitutional violations could maintain a Bivens action.) The Supreme Court vacated the judgment in Kotarski, however, and remanded the case to the Ninth Circuit for reconsideration in light of the Supreme Court's recent decision in Schweiker v. Chilicky, --- U.S. ----, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1980). See Kotarski v. Cooper, --- U.S. ----, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988).
 
 
 32
 On remand, the Ninth Circuit reversed its earlier opinion because to continue to imply a Bivens remedy would improperly disregard the rationale of Chilicky. See Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989). Chilicky emphasized the comprehensiveness of the CSRA and indicated that courts should defer to the expertise of Congress in matters such as the adequacy of remedial mechanisms provided by statute. Id. at 312 (citing Chilicky, 108 S.Ct. at 2468-69). "So long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment, because 'Congress is the body charged with making the inevitable compromises required in the design of a massive and complex program.' " Id. (citing Chilicky, 108 S.Ct. at 2470-71).
 
 
 33
 The Civil Service Reform Act provides that employees may submit a complaint to the Special Counsel of the Board regarding "prohibited personnel practices." See 5 U.S.C. Sec. 1206(a)(1). Because Congress provided some mechanism for appealing adverse personnel actions, we can not infer that the failure to provide complete relief was "inadvertent." Kotarski, 866 F.2d at 312. Accordingly, we affirm the district court's dismissal of appellant's third and fourth constitutional claims on the ground that no Bivens remedy can be implied.[2]CONCLUSION
 
 
 34
 We affirm the dismissal of Karamanos' Bivens claims, because under Chilicky and Kotarski, Karamanos is limited to his statutory remedy. We affirm the district court's dismissal of Karamanos' causes of action requesting judicial review of the agency's refusal to reclassify his position at a GS-13 level. We adopt the position of the District of Columbia Circuit that misclassifications are prohibited personnel practices under the CSRA. Therefore, Karamanos did not exhaust his administrative remedies.
 
 
 35
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Because our resolution of this issue requires that we affirm dismissal of the mandamus action, we need not decide whether we are bound by the holding of Burroughs that after exhausting the CSRA remedies available for reclassification decisions, mandamus review is available. We note that this aspect of the Burroughs decision may have been called into question by the Supreme Court's recent decision in United States v. Fausto, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). However, we need not resolve the effect of Fausto on mandamus actions in the present case
 
 
 [2]
 Appellant also contends that the court improperly granted appellees' motion for summary judgment as to all four causes of action before the court ruled on his motion to amend the complaint to include a fourth cause of action. A district court must, at a minimum, give a plaintiff the opportunity to submit a written memorandum before dismissing a cause of action sua sponte. See Wong v. Bell, 642 F.2d 359, 361-62 (9th Cir.1981). Remand to the district court at this juncture, however, would be a pointless exercise as we have already concluded that appellant may not maintain a Bivens action against his employing agency. "In such an instance, 'a federal appellate court is justified in resolving an issue not passed on below.' " Id. at 362. Accordingly, we affirm the dismissal of both appellant's third and fourth causes of action