Lavonne HOULIHAN,
Plaintiff–Appellant,

v.

OFFICE OF PERSONNEL MANAGE-
MENT, Defendant–Appellee.

No. 89–15368.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 20, 1990.

Decided July 24, 1990.

Ernest C. Hadley, Wareham, Mass., for plaintiff-appellant.

Matthew M. Collette, Civ. Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BEEZER and KOZINSKI, Circuit Judges, and BONNER,* District Judge.

PER CURIAM:

We decide today whether a federal employee may use the Privacy Act to challenge an Office of Personnel Management decision to reclassify her position.

I

Lavonne Houlihan is an Occupational Health Nurse employed by the Department of Health and Human Services at the Phoenix Indian Medical Center in Phoenix, Arizona. On December 19, 1986, Houlihan filed a "classification appeal" with OPM's Dallas Regional Office, requesting that her

---

* The Honorable Robert C. Bonner, United States District Judge for the Central District of Califor- nia, sitting by designation.

position be reclassified from the General Schedule (GS)–11 level to the GS–14 level.

OPM assigned Houlihan's case to Judy Frenzell, a Classification Specialist. Frenzell determined that a desk audit of Houlihan's position was necessary, and she visited Houlihan's place of employment on May 4 and 5, 1987. Frenzell interviewed Houlihan, her immediate supervisor, and an associate director of the medical center. During these interviews, Frenzell took notes, which she later consulted in preparing a draft decision on Houlihan's appeal. On May 12, 1987, OPM issued its decision, reclassifying Houlihan's position downward to the GS–9 level. Frenzell then destroyed her notes.

Houlihan appealed her reclassification decision within OPM. On September 15, 1987, OPM's Classification Appeals Office affirmed the Dallas Regional Office's decision. Houlihan also requested copies of OPM documents relating to the decision, including Frenzell's notes, under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. With the exception of Frenzell's notes, OPM complied with this request. In regard to the notes, OPM told Houlihan that they had been destroyed and, in any event, were not subject to disclosure under the Privacy Act.

Houlihan did not seek review of OPM's decision with the Merit Systems Protection Board or the Office of the Special Counsel. Rather, she filed an action in the district court, alleging violations of the Civil Service Reform Act (CSRA), the Privacy Act and the Administrative Procedure Act. Both Houlihan and OPM filed motions for summary judgment on all counts. The district court granted OPM's motions, finding that Frenzell's notes were not "records" within the meaning of the Privacy Act, and that the Civil Service Reform Act barred Houlihan's remaining claims. ER at 59. Houlihan appeals this decision.

## II

**A.** A misclassification of a federal employment position is a "prohibited personnel practice" as that term is defined in the CSRA. 5 U.S.C. §§ 2302(a), (b). *Karamanos v. Egger*, 882 F.2d 447, 451 (9th Cir.1989). In *Karamanos*, we held that mandamus review for alleged CSRA violations is not available until the employee exhausts all available administrative remedies. 882 F.2d at 450–51 (adopting as the law of this circuit the rationale advanced by Judge Beezer in his dissent from the denial of rehearing in *Burroughs v. Office of Personnel Management*, 784 F.2d 933, 934–36 (9th Cir.1986)). Relying on the District of Columbia Circuit's decision in *Barnhart v. Devine*, 771 F.2d 1515 (D.C. Cir.1985), *Karamanos* held that a federal employee must first seek review with the Office of the Special Counsel. 882 F.2d at 450–51. Because Houlihan has failed to exhaust the administrative remedies available to her under the CSRA, we may not consider the merits of her CSRA and APA claims.

**B.** An individual bringing a claim under the Privacy Act must demonstrate a "causal connection" between the alleged violation of the Act and the harm suffered by the individual. *Hewitt v. Grabicki*, 794 F.2d 1373, 1379 (9th Cir.1986); *Rosen v. Walters*, 719 F.2d 1422, 1423–25 (9th Cir. 1983). The precise standard is whether the alleged violation caused an agency to make "a determination ... which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C).[1]

In *Rosen v. Walters*, we considered whether a veteran who was denied service-related disability benefits could bring a Privacy Act claim alleging that "the [Veterans Administration] or some other agency deliberately destroyed medical records pertinent to his disability claim, thereby precluding him from presenting the VA with

---

**1.** Section 552a(g)(1)(C) provides that an individual may bring a claim whenever an agency: fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual....

all the evidence in his favor." 719 F.2d at 1424. We held that the veteran could not because 38 U.S.C. § 211(a) bars judicial review of VA benefits decisions, and the veteran's claim "would require precisely, although indirectly, the type of judicial review over Veterans Administration decisions that is precluded by [section] 211(a)." *Id.* at 1424.[2] Specifically, we explained that:

> Rosen's damage claim would require the district court to determine not only that the VA intentionally failed to maintain complete records, but also whether, but for the missing records, Rosen should have been awarded disability benefits. This would involve a review of the prior adverse VA decision to determine whether the absent evidence affected the result and, if the court so concludes, it must then act as the Veterans Administration itself, applying benefits rules to the facts in order to determine the correct award of disability had the files been adequately maintained. Such review by the district courts would necessarily run counter to the purposes of § 211(a).

*Id.* at 1425; *see also Pellerin v. Veterans Administration*, 790 F.2d 1553, 1555 (11th Cir.1986) (adopting our rationale in *Rosen* ).

■ In order to consider Houlihan's Privacy Act claim, we would have to decide not only whether OPM violated the Act, but whether OPM's alleged violation caused it to make "a determination ... which is adverse to [her]." 5 U.S.C. § 552a(g)(1)(C). As in *Rosen,* we would have to compare OPM's decision to the decision it would have made had the agency properly maintained its records, assuming there indeed was a Privacy Act violation. This would necessitate a careful review of the OPM's decision to reclassify Houlihan, a review that our decision in *Karamanos* precludes. 882 F.2d at 451.

Were we to permit Houlihan's Privacy Act claim, we "would open the back door to judicial review to perhaps an overwhelming number" of CSRA claims, *see Rosen,* 719 F.2d at 1425, thereby frustrating Congress's decision to assign to the OSC the task of policing alleged prohibited personnel practices. A disgruntled federal employee would need only to argue that her employer failed to comply with the Privacy Act to obtain judicial review of an employment decision. Because this result would be squarely at odds with the CSRA's statutory scheme, we affirm the district court's decision not to permit Houlihan to proceed with her Privacy Act claim.

### III

The judgment of the district court is affirmed in its entirety.

---

**2.** At the time *Rosen* was decided, section 211(a) provided:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the

United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

38 U.S.C. § 211 (amended Pub.L. 100–687, Div. A., Title I, § 101(a), Title IV, § 401(a), Nov. 18, 1988, 102 Stat. 4105, 4122, subsec. (a), effective on Sept. 1, 1989).