David ORSAY, Deputy U.S. Marshal; Michael Smith, Deputy U.S. Marshal, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF JUSTICE; United States Marshals Service; Office of the Inspector General; Eduardo Gonzalez; G. Ray Havens; Deborah Westbrook; Richard E. Kelly; Jerry Enomoto; Michael Nelson; Carolyn Griffin, Defendants–Appellees.

No. 00–16860.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed May 14, 2002.

Gary W. Gorski, Fair Oaks, CA, for the plaintiffs-appellants.

Joanne P. Rodriguez, Assistant U.S. Attorney, Boise, ID, for the defendants-appellees.

Before: HUG, D.W. NELSON, and HAWKINS, Circuit Judges.

Opinion by Judge HUG; Partial Concurrence and Partial Dissent by Judge D.W. NELSON.

HUG, Circuit Judge.

Deputy United States Marshals David Orsay and Michael Smith (collectively "Appellants") appeal the district court's dismissal of their claims under the Privacy Act, 5 U.S.C. § 552a, and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"). The district court held that it lacked subject matter jurisdiction to resolve the claims, which the court found preempted by the Civil Service Reform Act ("CSRA"), codified in various sections of Title 5 of the United States Code. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b)(1), and we have jurisdiction over Appellants' timely appeal under 28 U.S.C. § 1291. We affirm, holding that the CSRA bars Appellants' Privacy Act claims and some of their FTCA claims, and that the FTCA's intentional tort exception, 28 U.S.C. § 2680(h), bars Appellants' remaining FTCA claims.

## FACTS AND PROCEDURAL BACKGROUND

Appellants brought this action against the United States Department of Justice, the United States Marshals Service, the Office of the Inspector General, and seven employees of the United States Marshals Service (collectively "Appellees"). This appeal follows the district court's judgment granting Appellees' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and denying Appellants' motion to file a proposed second amended complaint, which Appellants had lodged with the court. Because we are reviewing a Rule 12(b)(1) dismissal, we accept as true the following factual allegations of Appellants' first amended and proposed second amended complaint. *See U.S. ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1189 (9th Cir.2001).

Appellants are Deputy United States Marshals in the employment of Appellee United States Marshals Service ("USMS"), a subdivision of Appellee United States Department of Justice ("USDOJ"). In or about November of 1997, Appellants filed a number of reports of misconduct by their supervisors with the USMS's Internal Affairs department and with Appellee Office of the Inspector General ("OIG"), also a USDOJ subdivision. In particular, Appellant Michael Smith complained about sexual improprieties by a USMS supervisor, Appellee Carolyn Griffin ("Griffin"). Appellants also reported that Griffin fraudulently dispersed large amounts of overtime pay to USMS employees for hours not actually worked. Lastly, Appellants filed a criminal report against a USMS supervisor, Michael Claxton ("Claxton"), for assault with a deadly weapon. Claxton allegedly pointed a loaded gun at Appellants on a number of occasions, and said things like: "You're dead," "You're history," "Gotcha," and "You never had a chance."

After Appellants filed these formal complaints, Appellees allegedly initiated an investigation of Appellants and opened a disciplinary file on them that supposedly focused on their formal complaints and included incomplete, inaccurate, irrelevant, and untimely records. Based upon this investigation and disciplinary file, Appellees allegedly assigned Appellants to less desirable positions that precluded them from gaining valuable experiences important for promotion within the USMS. Appellees' investigation and maintenance of the disciplinary file also allegedly led to Appellants' constructive suspension and/or discharge in January of 1998. Finally, according to Appellants, Appellees' maintenance of the disciplinary file created a record of implied wrongdoing by Appellants.

Based upon these factual allegations, Appellants brought this action in the district court, asserting, *inter alia,* claims under the Privacy Act and the FTCA. Appellants contend that Appellees' improper maintenance of the disciplinary file's records violated the Privacy Act, 5 U.S.C. § 552a(g)(1)(C), because it adversely affected Appellants' careers in law enforcement. Under the FTCA, Appellants argue that Claxton's conduct constituted assault and intentional infliction of emotional distress. Appellants further claim that Appellees were complicit in Claxton's assault and intentional infliction of emotional distress because after Appellants filed their criminal report, Claxton's only reprimand was a Letter of Instruction, apparently the least amount of discipline that the USMS gives. Appellants contend that this minimal punishment is favored treatment due to the fact that the regional USMS leadership consists of Claxton's friends.

Under Rule 12(b)(1), Appellees moved to dismiss Appellants' claims for lack of subject matter jurisdiction. Appellants moved to amend their complaint a second time. Finding Appellants' claims barred by the CSRA, the district court granted Appellees' motion to dismiss and denied Appellants' motion to amend. Appellants appeal this decision.

### DISCUSSION

Appellants argue that the district court erred in holding that the CSRA preempts their Privacy Act and FTCA claims. Appellees counter that the district court correctly found that the CSRA's administrative procedures are Appellants' exclusive means of redress. Alternatively, Appellees argue that the FTCA's intentional tort exception, 28 U.S.C. § 2680(h), bars Appellants' FTCA claims of assault and intentional infliction of emotional distress.

We review *de novo* the district court's dismissal for lack of subject matter jurisdiction. *See La Reunion Francaise SA v. Barnes,* 247 F.3d 1022, 1024 (9th Cir.2001). We review for an abuse of discretion the district court's denial of Appellants' motion to amend their complaint. *See U.S. v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1051 (9th Cir.2001).

### I. *The CSRA.*

The CSRA provides a remedial scheme through which federal employees can challenge their supervisors' "prohibited personnel practices." 5 U.S.C. § 2302. If the conduct that Appellants challenge in this action falls within the scope of the CSRA's "prohibited personnel practices," then the CSRA's administrative procedures are Appellants' only remedy, and the federal courts cannot resolve Appellants' claims under the Privacy Act and the FTCA. *See Houlihan v. Office of Pers. Mgmt.,* 909 F.2d 383, 384–85 (9th Cir.1990) (the CSRA preempted a federal employee's Privacy Act claim that alleged the misclassification of her employment position, a "prohibited personnel practice" under the CSRA); *Rivera v. U.S.,* 924 F.2d 948, 951–52 (9th Cir.1991) (the CSRA preempted a federal employee's FTCA claim regarding her supervisor's retaliation after the employee filed a complaint about the supervisor, a "prohibited personnel practice" under the CSRA).

Appellants argue that (1) the conduct underlying their Privacy Act and FTCA claims does not come within the CSRA's ambit, and (2) the CSRA cannot bar their claims because the CSRA's remedies are more limited than those available to the federal courts.

 We have previously rejected Appellants' second argument, holding that the CSRA preempts federal claims that fall within its scope even when the statute

provides no alternative remedy. *See Collins v. Bender,* 195 F.3d 1076, 1079 (9th Cir.1999) ("[E]ven if no remedy were available to[plaintiff] under the CSRA, he still could not bring [his] action if the acts complained of fell within the CSRA's confines."); *Blankenship v. McDonald,* 176 F.3d 1192, 1195 (9th Cir.1999) (holding that even though the federal employee was without an effective remedy under the CSRA, the CSRA precluded the employee's *Bivens* action "[b]ecause congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees"); *Saul v. U.S.,* 928 F.2d 829, 840 (9th Cir.1991) ("[T]he preclusive effect of the CSRA sweeps beyond the contours of its remedies."). Given our case law on this point, Appellants' second argument regarding the inadequacy of the CSRA's remedies must fail. Thus, the central issue before us is whether the conduct underlying Appellants' Privacy Act and FTCA claims comes within the CSRA's ambit.

## A. *Appellants' Privacy Act Claims.*

■ We conclude that Appellants' Privacy Act claims fall under the CSRA's definition of "prohibited personnel practices" because, first, the decisions at issue were "personnel actions," and second, they were allegedly taken for reasons prohibited by the statute.

At bottom, Appellants assert that Appellees retaliated against them for their formal complaints by opening a disciplinary file on them that contained false information and resulted in their involuntary leave of absence from the USMS, and in their assignment to less desirable positions that lacked promotional opportunities. The conduct that Appellants allege falls within a number of the CSRA's definitions of "personnel action": (1) a "disciplinary or corrective action," (2) "a detail, transfer, or reassignment," (3) "a decision concerning pay, benefits, or awards, or concerning ...

training if the ... training may reasonably be expected to lead to [a] ... promotion," and (4) "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(iii), (iv), (ix), & (xi). Given the CSRA's broad language and our case law's inclusive construction of the statutory term "personnel action," we conclude that Appellants' Privacy Act claims complain about "personnel actions" within the meaning of the CSRA. *See Saul,* 928 F.2d at 834 (rejecting a "cramped construction of personnel action" in finding that opening an employee's mail was a "personnel action").

Moreover, Appellants contend that Appellees took the personnel actions for reasons that the CSRA prohibits under 5 U.S.C. § 2302(b). Appellants suggest that Appellees initiated the conduct at issue in retaliation against Appellants because of the grievances that they filed regarding their supervisors' misconduct. The CSRA includes retaliation as a prohibited reason for taking a personnel action. 5 U.S.C. § 2302(b)(8) (prohibiting the taking of a personnel action "because of any disclosure of information by an employee ... which the employee ... reasonably believes evidences a violation of any law, rule or regulation, or [evidences] gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety"); 5 U.S.C. § 2302(b)(9) (prohibiting the taking of a personnel action "because of the exercise of any appeal, complaint, or grievance right granted by any law, rule or regulation"). Even if retaliation is not the primary reason for the personnel actions that Appellants challenge, it is implicit in Appellants' complaints that the actions were unjustified. They would therefore fall under the CSRA's general prohibition against prejudicial treatment based on "conduct which does not adversely affect the performance of the employee ... or

the performance of others." 5 U.S.C. § 2302(b)(10).

Because Appellants' Privacy Act claims are in fact complaints about "prohibited personnel practices" under the CSRA, we hold that the CSRA precludes consideration of the claims. *See Houlihan,* 909 F.2d at 384–85 (refusing to permit a Privacy Act claim that "would open the back door to judicial review [of] perhaps an overwhelming number of CSRA claims, thereby frustrating Congress's decision to assign to the [Office of Special Counsel] the task of policing alleged prohibited personnel practices"); *Kleiman v. Dep't of Energy,* 956 F.2d 335, 338–39 (D.C.Cir. 1992) (holding that a federal employee could not bypass the CSRA's exhaustive, remedial scheme by using the Privacy Act to collaterally attack the federal agency's decision to reclassify the employee's position); *Henderson v. Soc. Sec. Admin.,* 908 F.2d 559, 560–61 (10th Cir.1990) (refusing to consider a Privacy Act claim regarding inaccurate records that essentially sought review of a federal agency's allegedly improper reinstatement decision, a claim that falls within the CSRA's exclusive provisions).[1]

■ Appellants argue that the CSRA does not preempt their Privacy Act claims, asserting that Congress did not intend that the CSRA eliminate rights under the Privacy Act. To buttress this argument,

Appellants point to 5 U.S.C. § 1222 and to the legislative history of section 1222, which was enacted in the Whistleblower Protection Act of 1989 ("WPA"), which substantially redesigned the CSRA scheme. However, in *Rivera v. United States,* 924 F.2d 948, 952–54 (9th Cir.1991), we rejected the very argument that Appellants now raise. Section 1222 provides that "nothing in this chapter . . . shall be construed to limit any right or remedy available under a provision of statute which is outside . . . this chapter." 5 U.S.C. § 1222. In *Rivera,* we held that section 1222 and its legislative history indicate only that Congress did not want the WPA to restrict remedies available before the WPA's enactment. Because the CSRA scheme in existence before the WPA barred federal causes of action falling within the CSRA's scope, the remedies that these causes of action offered were not "available," and so section 1222 did nothing to alter the CSRA's preemptive effect. *Rivera,* 924 F.2d at 952–54; *Grisham v. U.S.,* 103 F.3d 24, 26–27 (5th Cir. 1997) (agreeing with *Rivera* that although the WPA increased protections for whistleblowers, it did so in the context of the CSRA and so did not authorize federal employees to bring, under other statutes, claims that arise out of conduct addressed by the CSRA). In light of *Rivera,* Appellants' argument regarding section 1222 and its legislative history is without merit.

---

1. Appellants cite *Hewitt v. Grabicki,* 794 F.2d 1373 (9th Cir.1986), for the proposition that the CSRA is no bar to their Privacy Act claims. In *Hewitt,* we dismissed on the merits the Privacy Act claims brought by a former Veterans Administration physician against the United States and various Veterans Administration employees. Although the plaintiff-physician complained about personnel practices of the Veterans Administration, *Hewitt* did not address whether the CSRA preempted federal court review of his Privacy Act claims. *Hewitt* therefore does not constitute binding authority with respect to the district court's

subject matter jurisdiction over Appellants' Privacy Act claims. *See Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1363 (9th Cir.1998) (reaffirming that this court is not bound by prior *sub silentio* holdings on jurisdictional issues). Our decision in *Houlihan,* not *Hewitt,* governs this case and compels the conclusion that the CSRA preempts Appellants' Privacy Act claims. *See Houlihan,* 909 F.2d at 384–85 (holding that the CSRA barred a federal employee's Privacy Act claim that fell within the CSRA's ambit).

■ Appellants also contend that the district court erred in dismissing their Privacy Act claims against the USDOJ and the OIG, alleging that these government entities do not employ Appellants. Instead, Appellants declare that only the USMS is their employer, and they therefore contend that the CSRA does not preempt their claims against the USDOJ and the OIG because the requisite employer-employee nexus does not exist. Appellants' statement that the USDOJ is not their employer is disingenuous, at best, because the USMS is a subdivision of the USDOJ, a fact reflected in Appellants' complaints. Nonetheless, even assuming that the USDOJ and the OIG do not employ Appellants, this contention is not well founded. The CSRA reaches "prohibited personnel practices" by *"[a]ny employee* who has authority to take, recommend, or approve any personnel action" "with respect to an employee in ... a covered position in an agency." 5 U.S.C. § 2302(a)(2)(A) & (b) (emphasis added). The CSRA contains no specific requirement that the employee that engaged in the prohibited personnel practice be an employee of the organization that employs the employee subject to the adverse personnel determination. As we have already discussed, Appellants complain about "prohibited personnel practices" by USDOJ and OIG employees authorized to take the actions that they did. Furthermore, the parties do not dispute that Appellants, as Deputy United States Marshals, are employees in "a covered position in an agency." *See* 5 U.S.C. § 2302(a)(2)(B) & (C). Accordingly, the district court properly found that the CSRA precluded consideration of Appellants' Privacy Act claims.

B. *Appellants' FTCA Claims.*

The conduct underlying Appellants' FTCA claims is two-fold, involving (1) Claxton's alleged pointing of a loaded gun at them, and (2) the purported failure of the USMS and OIG to punish Claxton adequately for his behavior, supposedly due to the fact that the regional USMS leadership consists of Claxton's friends. We conclude that the CSRA does not bar Appellants' claims with respect to Claxton's conduct, but does preclude consideration of their claims regarding the sufficiency of Claxton's discipline.

■ In order for the CSRA to preempt a federal cause of action, the underlying conduct must involve "personnel action," which the statute defines to mean any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits and the like, decision to order psychiatric examination, and any other significant change in duties, responsibilities, or working conditions. *See* 5 U.S.C. § 2302(a)(2)(A)(i)-(xi); *Brock v. U.S.,* 64 F.3d 1421, 1424–25 (9th Cir.1995) (holding that the CSRA does not preempt federal claims involving conduct that does not fall within one of the CSRA's eleven categories of "personnel action"); *Collins,* 195 F.3d at 1079–80 (finding the district court's dismissal improper when the CSRA's definition of "personnel action" did not cover the conduct at issue). Claxton's alleged aiming of a loaded weapon at Appellants does not fit any of the CSRA's definitions of "personnel action." Consequently, the CSRA does not bar Appellants' FTCA claims that Claxton's behavior constituted assault and intentional infliction of emotional distress. *See Brock,* 64 F.3d at 1424–25 (the CSRA did not preclude consideration of claims of rape and sexual assault); *Collins,* 195 F.3d at 1079–80 (the CSRA did not preempt a claim regarding a warrantless search of a plaintiff-employee's home).

■ However, Appellants' complaints about the supposedly minimal punishment

issued Claxton address "disciplinary or corrective action," one of the CSRA's categories of "personnel action." *See* 5 U.S.C. § 2302(a)(2)(A)(iii). Moreover, the CSRA prohibits any federal employee with authority from taking or failing to take personnel action in violation of "merit system principles," one of which requires the protection of federal employees from arbitrary action and personal favoritism. 5 U.S.C. § 2302(b)(12); 5 U.S.C. § 2301(b)(8)(A). Appellants' allegation that Claxton received inappropriately light discipline due to his friendship with the employees issuing the discipline is therefore a "prohibited personnel practice" under the CSRA. Consequently, the CSRA preempts Appellants' FTCA claims regarding the purported inadequacy of Claxton's punishment.

In sum, we hold that the district court properly found the CSRA to bar review of Appellants' Privacy Act claims and FTCA claims with respect to the discipline given Claxton. However, the district court erred in concluding that the statute also precludes consideration of Appellants' FTCA claims that Claxton's conduct was assault and intentional infliction of emotional distress.

II. *The FTCA's Intentional Tort Exception.*

■ Appellees argue in the alternative that even if the CSRA does not preempt Appellants' FTCA claims regarding Claxton's assaultive conduct, the FTCA's intentional tort exception, codified in 28 U.S.C. § 2680(h), precludes consideration of the claims. We may affirm the district court's judgment on any ground supported by the record, even if the district court did not rely on the ground. *See Tanaka v. Univ. of S. California,* 252 F.3d 1059, 1062 (9th Cir.2001).

The FTCA provides a cause of action against the United States for persons injured by the tortious activity of a federal employee when the employee was "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Appellees concede in their argument on appeal that Claxton was acting within the scope of his employment when he engaged in the alleged conduct.[2] *Cf. Green v. Hall,* 8 F.3d 695, 698 (9th Cir.1994) (the U.S. Attorney General's certification, pursuant to 28 U.S.C. § 2679(d)(1), that a federal employee was acting within the scope of his or her employment when the relevant incident occurred is conclusive unless challenged). The FTCA's waiver of the federal government's sovereign immunity does not apply, however, to claims "arising out of assault" and other intentional torts specified in the statute unless the claims involve "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). The statute defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."[3] *Id.* The parties do not dispute that

---

**2.** Basically, Appellees had to concede this point in order to argue that Appellants' FTCA claims regarding Claxton's conduct fell within the scope of the CSRA.

**3.** The full text of 28 U.S.C. § 2680(h) is as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to—
. . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this provi-

Claxton is an investigative or law enforcement officer as defined in the statute. The question before us, then, is whether Appellants' claims of assault and intentional infliction of emotional distress are claims "arising out of assault" with respect to "acts or omissions of [an] investigative or law enforcement officer[ ]" such that Appellants may bring the claims under the FTCA. *See* 28 U.S.C. § 2680(h).

Appellees argue that the federal courts are without subject matter jurisdiction to resolve Appellants' claims regarding Claxton's conduct because Claxton was not engaged in investigative or law enforcement activity at the time of the alleged assault. Appellees assert that Congress, through the special proviso in 28 U.S.C. § 2680(h) regarding investigative or law enforcement officers, did not intend to subject the United States to liability whenever the officers committed an enumerated, intentional tort while acting within the scope of their employment. Rather, Appellees contend, Congress sought to permit a cause of action against the federal government only when the officers committed one of the listed torts while performing investigative or law enforcement activities.

The FTCA clearly provides that no action may be maintained against the United States for the torts of federal investigative or law enforcement officers unless the officers were acting within the scope of their employment at the time of the alleged torts. *See* 28 U.S.C. § 1346(b)(1). At issue is whether Congress, in carving out an exception to the FTCA's intentional tort exception for the "acts or omissions of investigative or law enforcement officers," intended to allow federal government liability only when the investigative or law enforcement officers were acting as such

by engaging in investigative or law enforcement activities, or to extend the government's liability more broadly to any situation arising within the scope of the officers' federal employment. We previously considered this issue in *Arnsberg v. United States,* 757 F.2d 971 (9th Cir.1985), and found that "Congress intended § 2680(h) to apply only when the federal official acts in his or her investigative or law enforcement capacity." *Arnsberg,* 757 F.2d at 978 n. 5. In *Arnsberg,* we relied upon this construction of section 2680(h) as an alternative basis for holding that the FTCA did not allow an action against the United States for a magistrate judge's improper authorization of an arrest. *Id.* To the extent that this construction of section 2680(h) was not essential to our holding in *Arnsberg* and could be considered *dictum,* we find it persuasive *dictum* and affirm it for the following reasons.

■■■■ "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Moreover, any ambiguities in the scope of the government's waiver must be construed in favor of immunity. *Id.; United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995). We conclude that the text of section 2680(h) expressly subjects the United States to suit for claims that arise out of one of the specified, intentional torts, and that allege intentionally tortious "acts or omissions of investigative or law enforcement officers." *See* 28 U.S.C. § 2680(h); *see also Arnsberg,* 757 F.2d at 977 (stating that the FTCA subjects the federal government to liability when "wrongful acts by law en-

so, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforce-

ment officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

forcement officers cause the [intentional tort]"). However, we conclude that the section fails to establish unambiguously that the government's waiver encompasses intentionally tortious conduct by investigative or law enforcement officers when they were not engaged in investigative or law enforcement activities, but nonetheless acting within the scope of their employment. We so hold because the statute is reasonably susceptible of an interpretation, which we set forth below, that limits the government's liability to torts committed in the course of investigative or law enforcement activities. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34–37, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (holding that the federal government's waiver of its sovereign immunity in section 106(c) of the Bankruptcy Code did not extend unambiguously to monetary claims when the section was susceptible of plausible interpretations not authorizing monetary relief).

In section 2680(h), Congress refused to make the United States liable for certain intentional torts by federal employees, but created a limited exception to this refusal for the "acts and omissions of investigative or law enforcement officers." 28 U.S.C. § 2680(h). Congress' decision to single out investigative and law enforcement officers from other federal employees reflects a concern that these officers, unlike other federal employees, are authorized to use force and threaten government action when necessary to carry out their investigative and law enforcement duties. This authority to use force and threaten government action carries with it the risk of abuse, or the risk of intentionally tortious conduct. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (noting the risk that federal law enforcement officers, under a claim of federal authority, will invade citizens' rights by engaging in unlawful conduct like unlawful entry or arrest). By singling out investigative and law enforcement officers in section 2680(h), Congress provided a remedy for this kind of intentionally tortious conduct that arises in the context of investigative and law enforcement activities. Congress did not create a remedy for torts arising outside of this context, like the workplace torts that Appellants allege. To construe section 2680(h) otherwise—as reaching these workplace torts—would create an arbitrary distinction between investigative and law enforcement officers and other federal employees, and produce the bizarre result that suit lies against the United States when one federal law enforcement officer punches another in the office, but not when other federal employees engage in the same conduct. *Compare* 28 U.S.C. § 1346(b)(1) (permitting claims against the United States for injuries caused by the negligent or wrongful conduct of federal employees acting within the scope of their employment), *with* 28 U.S.C. § 2680(h) (limiting the federal government's liability for intentional torts to "the acts or omissions of investigative or law enforcement officers"). ·

Support for the more limited construction of the government's waiver can be found in an examination of Congress' purposes and the historical context of the legislative amendment that enacted the proviso in section 2680(h) regarding investigative or law enforcement officers. *See United States v. State of Oregon*, 44 F.3d 758, 765–66 (9th Cir.1994) (the scope of the government's waiver of its sovereign immunity may "be ascertained by reference to underlying congressional policy") (quoting *Franchise Tax Bd. v. U.S. Postal Serv.*, 467 U.S. 512, 521, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984)). The section's legislative history indicates that Congress intended the proviso to "provid[e] a remedy against the Federal Government for innocent victims of Federal law enforcement

abuses." S.Rep. No. 93–588, 93d Cong., 2d Sess. 3 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin. News 2789, 2792 (1974) (*"Senate Report"*). The impetus for the proviso was "several incidents . . . in which Federal narcotics agents engaged in abusive, illegal and unconstitutional 'no-knock' raids," the most notorious of which were in Collinsville, Illinois. *Id.* at 2790. The amendment was to provide an "effective legal remedy against the Federal Government for the actual physical damage[and] the pain, suffering and humiliation to which the Collinsville families [were] subjected." *Id.* Noting that "[f]or years scholars and commentators [had] contended that the Federal Government should be liable for the tortious acts of its law enforcement officers when they act in bad faith or without legal justification," the legislative history states that the proviso would remedy the "injustice" of holding "the Federal Government . . . harmless if a federal narcotics agent intentionally assaults [a] citizen in the course of an illegal 'no-knock' raid." *Id.* at 2791. This language in the legislative history shows that Congress was focused on remedying "Federal law enforcement abuses," and lends support to a statutory construction that limits the government's waiver of its immunity to intentional torts committed in the course of investigative or law enforcement activities.[4]

■ Because this construction is a reasonable interpretation of section 2680(h), we conclude that the section does not unequivocally waive the federal government's

4. We recognize, however, that the legislative history of section 2680(h) does not offer a record of congressional intent that is a model of clarity. *See, e.g., Arnsberg,* 757 F.2d at 978 n. 4 (constitutional tort claims are not cognizable under the FTCA, notwithstanding contrary language in the legislative history of section 2680(h) indicating that Congress sought to create federal government liability for the constitutional torts of federal law enforcement officers); *Fed. Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (state tort law, not federal constitutional law, provides the source of liability under the FTCA). There is language in the legislative history of section 2680(h) that suggests that the proviso regarding investigative or law enforcement officers sweeps more broadly than the construction that we offer here. For example, the legislative history states that "[t]he effect of this provision is to deprive the Federal Government of the defense of sovereign immunity in cases in which Federal law enforcement agents, acting within the scope of their employment, or under color of Federal law, commit any of the following torts: assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process." *Senate Report* at 2791. This language—through its reference to acts within the scope of the officers' employment—indicates that the federal government's waiver of its sovereign immunity might reach more than federal law enforcement abuses, and might apply whenever investigative or law enforcement officers commit an enumerated tort while acting within the scope of their employment. Nonetheless, this language does not affect our analysis because it does not render unreasonable our submitted statutory construction, which finds support in the text of the statute and in other parts of the legislative history. *See Nordic Village,* 503 U.S. at 37, 112 S.Ct. 1011 (the scope of the government's waiver is not sufficiently clear so long as under a plausible construction of the statutory waiver, the waiver does not extend to the claims at issue). If anything, the conflict in the legislative history's language describing, on the one hand, the particular harm that Congress sought to remedy and, on the other, the anticipated effect of the legislative amendment serves only to underscore the uncertain reach of the waiver contained in section 2680(h). Construing ambiguities in favor of immunity, we find that the waiver does not encompass torts committed ˙by investigative or law enforcement officers when they are not engaged in investigative or law enforcement activities. *See Williams,* 514 U.S. at 531, 115 S.Ct. 1611 (when confronted with a purported waiver of the federal government's sovereign immunity, courts must "constru[e] ambiguities in favor of immunity").

sovereign immunity for all FTCA claims alleging that investigative or law enforcement officers committed one of the specified, intentional torts while acting within the scope of their employment. *See Nordic Village*, 503 U.S. at 34–37, 112 S.Ct. 1011 (the "unequivocal expression" requirement is not met when there exist plausible, alternative statutory interpretations). Construing ambiguities in favor of immunity, we hold that the section's waiver reaches only those claims asserting that the tort occurred in the course of investigative or law enforcement activities. *See Lane*, 518 U.S. at 192, 116 S.Ct. 2092 (courts must construe ambiguities in the scope of a waiver of sovereign immunity in favor of immunity). Appellants do not allege that Claxton pointed a loaded gun at them in the context of investigative or law enforcement activities. Accordingly, Appellants' FTCA claims do not come within the waiver of immunity provided in section 2680(h) for the acts and omissions of investigative or law enforcement officers. The section's exception for claims "arising out of assault" therefore bars Appellants' FTCA claims that Claxton's conduct constituted assault and intentional infliction of emotional distress. *See* 28 U.S.C. § 2680(h); *Thomas–Lazear v. Fed. Bureau of Investigation*, 851 F.2d 1202, 1206–07 (9th Cir.1988) (28 U.S.C. § 2680(h) barred a negligent infliction of emotional distress claim as a claim "arising out of" slander when the emotional distress claim was nothing more than a restatement of the slander claim that section 2680(h) barred). On this basis, we affirm the district court's decision that it lacked subject matter jurisdiction over the claims. *See Mundy v. United States*, 983 F.2d 950, 952 (9th Cir.1993) ("When a claim falls within a statutory exception to the FTCA's waiver

of sovereign immunity, the court is without subject matter jurisdiction to hear the case."). Having properly dismissed the Appellants' action for want of subject matter jurisdiction, the district court's denial of Appellants' motion to amend their complaint a second time was not an abuse of discretion. *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir.1998) (denial of leave to amend is not an abuse of discretion when further amendment would be futile).[5]

**AFFIRMED.**

D.W. NELSON, Circuit Judge, concurring in part, dissenting in part:

I join with the majority except for part II.

I respectfully dissent from the majority's holding that the federal government may not be held liable for the alleged tortious conduct of a federal law enforcement officer in this case because the officer was not engaged in specific investigative or law enforcement activities at the time the tort was committed.

The statute at issue clearly imposes liability for assaults committed by federal law enforcement officers:

> [w]ith regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title [imposing liability on the federal government] shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

---

5. We decline to consider Appellants' First Amendment challenge to the CSRA because Appellants did not raise the challenge in the proceedings before the district court. *See Ari-* *zona v. Components Inc.*, 66 F.3d 213, 217 (9th Cir.1995) (parties forfeit on appeal those claims that they do not raise sufficiently for the district court to rule on them).

28 U.S.C. § 2680(h). There is no statutory limitation as to what activity the law enforcement officers must be engaged in other than the general requirement that the officer be "acting within the scope of his office or employment." 28 U.S.C. § 1346(b).

The defendants have conceded that Supervisor Claxton was acting within the scope of his employment as a federal law enforcement officer when he allegedly pointed a loaded gun at the plaintiffs and made statements such as: "You're dead," "You're history," "Gotcha," and "You never had a chance." This conduct falls within the enumerated tort of assault, and the government should be held liable if the allegations prove to be true.

I find no ambiguity in the statute that would suggest that we resort to the legislative history to determine the intent of Congress. Likewise, I do not find the words of the statute quoted above to be reasonably susceptible to an interpretation that would shield the government from liability because the defendant is not engaged in a specific law enforcement activity when the tort is committed.

I also do not find the majority's citation to *Arnsberg* persuasive. *Arnsberg* dealt with a magistrate. The court in *Arnsberg* reasoned that magistrates have a dual character, sometimes acting in the capacity of a law enforcement officer and sometimes in the capacity of an adjudicative official. *Arnsberg,* 757 F.2d at 978 n. 5. Therefore, the court looked to the activity the magistrate was engaged in at the time the alleged tort was committed in order to determine if the magistrate was acting in his law enforcement capacity or his adjudicative capacity. Here, U.S. Marshals have no adjudicative function. They do not have the dual character that the *Arnsberg*

court grappled with. There is no need for us to inquire into what duties Supervisor Claxton was engaged in except to determine if he was acting within the scope of his employment when the tort was committed.

Because the defendants have conceded that Claxton was acting within the scope of his employment when the alleged assault was committed, I would remand for a trial on the merits with respect to the claims stemming from Claxton's alleged assaultive conduct.